ROBERT H. HARDIN, JR., PLAINTIFF v. KCS INTERNATIONAL, INC. D/B/A CRUISERS YACHTS, AND CAPE FEAR YACHT SALES OF NORTH CAROLINA, INC., DEFENDANTS

No. COA08-996

(Filed 15 September 2009)

### 1. Appeal and Error— record—not timely filed—substantial violation

Plaintiff's counsel was assessed the printing costs of an appeal where the record was not timely filed. Although the relatively brief delay in filing the record did not hinder review on the merits or impair the adversarial process in this case, failing to

comply with the deadlines in the Rules of Appellate Procedure is a substantial violation. Plaintiff's counsel did not attempt to rectify the error by filing a motion requesting an extension of time or that the record be deemed timely for good cause shown.

**2. Compromise and Settlement— order to enforce settlement—standard of review—summary judgment**

The summary judgment standard of review is applied to reviewing the trial court's order granting a motion to enforce a settlement agreement.

**3. Compromise and Settlement— settlement before discovery—facts subsequently learned**

The trial court did not err by dismissing claims of fraud in a settlement agreement where plaintiff chose to forego discovery, settle his claims, and enter into a general release. Plaintiff cannot now avoid the release by arguing that he subsequently learned facts that would have persuaded him not to sign the release when he has not demonstrated that defendant had any duty to disclose those facts.

**4. Compromise and Settlement— failure of settlement—allegation of fraud—no evidence of intent at time of settlement**

Plaintiff failed to forecast sufficient evidence of fraud to defeat summary judgment after the failure of a settlement agreement arising from alleged defects in a yacht and subsequent repairs. Plaintiff did not present evidence that the boat manufacturer (Cruisers) did not intend to perform the repairs properly at the time it entered into the settlement agreement.

**5. Compromise and Settlement— failure of settlement—allegation of fraud—not sufficiently specific**

Plaintiff presented insufficient evidence to warrant setting aside a settlement agreement based on fraud in an action arising from alleged defects in a boat. Although plaintiff contended that a marine surveyor was fraudulently misrepresented as being independent, he did not specifically identify the misrepresentations on which he relied.

**6. Compromise and Settlement— consideration—repairs not completed—resolution of litigation**

Plaintiff received the consideration for which he bargained in a settlement agreement in an action arising from alleged defects

in a boat even though the specified repairs were not completed. The settlement agreement was supported in part by consideration in the resolution of the litigation.

**7. Compromise and Settlement— enforcement of agreement—rescission—terms of agreement**

The terms of a settlement agreement defeated plaintiff's claim that he was entitled to rescission based on breach of the agreement. The contract gave plaintiff the right to seek enforcement of the settlement agreement's requirements or to seek damages for breach.

**8. Compromise and Settlement— conditions precedent to dismissal—general release—enforcement of settlement not sought**

The issue of whether plaintiff's obligation to dismiss his action under a settlement agreement was based on conditions precedent was argued for the first time on appeal and was not properly before the appellate court. Moreover, his contention did not address the general release that he signed which did not have a condition precedent and that released underlying claims he sought to resurrect.

Appeal by plaintiff from order entered 27 March 2008 by Judge John E. Nobles, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 24 February 2009.

*Hodges & Coxe, P.C., by C. Wes Hodges, II, for plaintiff-appellant.*

*McGuireWoods LLP, by Henry L. Kitchin, Jr. and John H. Anderson, Jr., for defendant-appellee KCS International, Inc.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Scott Lewis, for defendant-appellee Cape Fear Yacht Sales of North Carolina, Inc.*

GEER, Judge.

Plaintiff Robert H. Hardin, Jr. appeals from the trial court's order dismissing his complaint with prejudice and enforcing the settlement agreement between Hardin and defendants KCS International, Inc. doing business as Cruisers Yachts ("Cruisers") and Cape Fear Yacht Sales of North Carolina, Inc. ("Cape Fear"). Hardin primarily argues

on appeal that the trial court erred in enforcing the settlement agreement because it was induced by defendants' fraud. Hardin's evidence fails, however, to establish the necessary elements of a claim for fraud, and we therefore affirm the trial court's order.

Facts

On 15 December 2005, Hardin purchased a 2006 Cruisers 415 Yacht from Cape Fear for $452,705.00. Cruisers manufactured the boat. Almost immediately after the purchase, Hardin began experiencing problems with the boat. Specifically, Hardin was concerned that the boat did not perform to the manufacturer's specifications; it had repeated engine, fuel system, and generator failures; the boat's keypads and air conditioning malfunctioned; water leaked into the boat's interior; there were numerous defective fixtures and mechanisms; and the fiberglass hull had cracks in it. In March 2006, Hardin demanded either return of the purchase price or a new boat. Defendants refused to return Hardin's money or provide a new boat, maintaining that any defects or non-conforming conditions would be repaired in a timely fashion under the boat's warranties.

Hardin filed suit on 26 January 2007, asserting claims against defendants for breach of contract and breach of express and implied warranties. Hardin subsequently served his first request for production of documents on 15 February 2007. Defendants obtained an extension of their time to respond to the document request until 19 April 2007. The parties then engaged in settlement negotiations before any response was served.

On 26 March 2007, Hardin, defendants, and Volvo Penta of the Americas, Inc. (the manufacturer of the boat's engines) entered into a "Settlement Agreement and Release."[1] The settlement agreement provided that in consideration for defendants' replacing the engines and making specified repairs, Hardin would dismiss his cause of action with prejudice. Hardin was not, however, required to dismiss his action until "completion of the engine replacement and other repairs called for [in the settlement agreement], the independent survey of the Boat . . ., and any further repairs identified by the survey . . . ." The settlement agreement also included a general release:

In consideration of the foregoing payments, and other valuable consideration, the receipt and sufficiency of which is hereby

---

1. Volvo Penta of the Americas, Inc. is not a party to this action or this appeal.

HARDIN v. KCS INT'L, INC.

[199 N.C. App. 687 (2009)]

acknowledged, HARDIN and his administrators, personal representatives, successors, heirs, and assigns, hereby release and forever discharge CRUISERS, CAPE FEAR, and VOLVO and their officers, directors, shareholders, employees, agents, servants, successors and assigns, from any and all claims in any way related to the dispute between them regarding the Boat to date. The effect of this Paragraph is intended to be a general release of all claims that HARDIN may have against CRUISERS, CAPE FEAR, and VOLVO as a result of their dealings to date, and specifically including but not limited to the subject matter of this Agreement and the Civil Action, although this release is *not* intended to release or bar any future claims based upon any new warranty issues arising under any pre-existing warranty that has not yet expired, failure of the repairs required herein, breach of the new engine warranty or extended protection plan provided hereunder, or an action to otherwise enforce the terms of this Agreement.

Cruisers took possession of the boat on 30 March 2007 in order to replace the engines and make the required repairs. Cruisers returned the boat to Hardin on 4 May 2007 and notified him that the repairs had been completed, that an inspection by Wayne Canning had been performed (as provided in the settlement agreement), and that everything was fine with the boat.

Upon return of the boat, Hardin identified various repairs that had not been done, including fixing a substantial leak around the forward salon windshield and the electronic keypad. In addition, Hardin was concerned about "rigged" repairs to the trim tabs, added propeller well extenders, and spliced wiring in the cockpit roof. Although Cruisers claimed that it had fixed the windshield, a representative of Cape Fear determined that the windshield, in fact, had not been repaired. According to Hardin, that leak resulted in additional damage to the boat, including damage to the boat's coring material.

On 26 June 2007, at Hardin's invitation, Canning performed a second inspection with Hardin and representatives of both defendants present. As a result of that inspection, Canning identified 14 additional repairs that needed to be made, including removing, rebedding, and recaulking the forward salon windows, as well as testing and repairing the boat's coring material in the areas of the leaks.

Following Canning's inspection, Hardin agreed to Cruisers' request to have its own technician inspect the boat. The technician

recommended doing repairs that were not as extensive as those indicated as necessary by Canning. In response, Hardin informed defendants that he "considered the Settlement Agreement to be null and void and that [he] intended to proceed with litigation."

After Hardin refused to dismiss his action, the case was referred to mediation. Roughly three weeks prior to the mediation conference, Cruisers produced documents in response to Hardin's earlier request for production of documents. These documents revealed that Hardin's boat, while being shipped from Cruisers' manufacturing facility in Wisconsin to North Carolina, had been involved in a collision with a tree.

Hardin subsequently moved to amend his complaint to include claims for fraud and negligent misrepresentation against Cape Fear for failing to disclose the facts surrounding the collision prior to Hardin's purchase of the boat. Cruisers filed an answer on 6 August 2007, generally denying Hardin's allegations and moving to dismiss for failure to state a claim for relief based on the settlement agreement. Cruisers later filed a motion on 16 November 2007 seeking enforcement of the settlement agreement and an order directing Hardin to voluntarily dismiss his complaint with prejudice. Cape Fear filed a similar motion on 26 November 2007.

In an order entered 27 March 2008, the trial court dismissed Hardin's complaint with prejudice. The court ruled: "[A]fter reviewing all matter of record, including the affidavits filed with the court, and after hearing from counsel for defendants in support of Defendants' Motions and from counsel for the plaintiff in opposition to Defendants' Motions as set out in Plaintiff's Response, and after considering the applicable law, . . . the Settlement Agreement is valid and enforceable, and the Defendants' Motions should be GRANTED[.]"

On 23 April 2008, Hardin filed a notice of appeal from the trial court's order enforcing the settlement agreement. On 28 May 2008, he served defendants with a proposed record on appeal. On 27 June 2008, defendants jointly filed their objections and amendments to Hardin's proposed record. Hardin served defendants with a second proposed record on 1 August 2008, but defendants refused to stipulate to the settling of the record as requested. Hardin filed the record on appeal with this Court on 19 August 2008. Cruisers filed a motion to dismiss Hardin's appeal on 26 September 2008.

**HARDIN v. KCS INT'L, INC.**

[199 N.C. App. 687 (2009)]

Motion to Dismiss Appeal

[1] Cruisers moves to dismiss Hardin's appeal on the ground that "Plaintiff's failure to timely file the Record on Appeal within the period set forth in Rule 12(a) . . . mandates dismissal of Plaintiff's appeal because such a default is a jurisdictional default." Hardin acknowledges that there was a "minimal" delay in filing the record on appeal, but counters that under the Supreme Court's analysis in *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008), "the requirements of the current Rule 12(a) are not jurisdictional."

This Court, in *Copper v. Denlinger*, 193 N.C. App. 249, 259, 667 S.E.2d 470, 479-80 (2008), *appeal dismissed in part and disc. review allowed in part*, 363 N.C. 124, 672 S.E.2d 686 (2009), held that a violation of Rule 12 of the Rules of Appellate Procedure is nonjurisdictional. Our Supreme Court has stressed that "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Dogwood*, 362 N.C. at 198, 657 S.E.2d at 365. The Supreme Court, in *Dogwood*, *id.* at 199, 657 S.E.2d at 366, also explained that an appellate court should impose a sanction of any type only when a party's nonjurisdictional rules violations rise to the level of a "substantial failure" under N.C.R. App. P. 25 or a "gross violation" under N.C.R. App. P. 34. In the absence of a substantial or gross violation, the Court should not impose any sanction at all, but rather "the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible." *Dogwood*, 362 N.C. at 199, 657 S.E.2d at 366.

Cruisers makes no argument that the violation was substantial or gross. Nor has Hardin's relatively brief delay in filing the record on appeal hindered our review of the merits of the case or impaired the adversarial process. Nonetheless, failing to comply with the deadlines set forth in the Rules of Appellate Procedure is not a technical or insignificant violation of the rules, but rather is a substantial one. Moreover, Hardin's counsel did not attempt to rectify the error by filing a motion with this Court requesting either a retroactive extension of time pursuant to N.C.R. App. P. 27 or that the record be deemed timely filed for good cause shown under N.C.R. App. P. 25. Pursuant to Rule 34(b), we, therefore, order Hardin's counsel to pay the printing costs of this appeal. *See Copper*, 193 N.C. App. at 262, 667 S.E.2d at 480. We instruct the Clerk of this Court to enter an order accordingly.

## Standard of Review

[2]  On appeal, the parties disagree as to the standard of review applicable to the trial court's order granting defendants' motions to enforce the settlement agreement. Hardin points to the fact that in response to defendants' motions to enforce the settlement agreement, he submitted "affidavits, depositions, and other discovery materials, the traditional elements of a summary judgment hearing." He contends that the standard for reviewing a grant of summary judgment should, therefore, apply here. Defendants, on the other hand, maintain that they filed their motions pursuant to Rule 41 of the Rules of Civil Procedure, and thus the trial court's order should be reviewed under a "competent evidence" standard.

Defendants, in support of their contention, cite *Currituck Assocs.-Residential P'ship v. Hollowell*, 166 N.C. App. 17, 24, 601 S.E.2d 256, 262 (2004), *aff'd per curiam by an equally divided Court*, 360 N.C. 160, 622 S.E.2d 493 (2005), in which this Court held that the motion in that case to dismiss the plaintiffs' claims was made "pursuant to N.C. Gen. Stat. § 1A-1, Rule 41 (2003)." *Currituck*, however, was affirmed by an equally divided Supreme Court and thus this Court's decision "stands without precedential value." 360 N.C. at 160, 622 S.E.2d at 493. Although the opinion could still have persuasive value, we do not find *Currituck* persuasive on this issue.

We note that *Currituck* relied upon *State ex rel. Howes v. Ormond Oil & Gas Co.*, 128 N.C. App. 130, 493 S.E.2d 793 (1997). This Court in *Howes* held that "the general rule" is that a party "may enforce a settlement agreement by filing a voluntary dismissal of its original claim and then instituting another action on the contract, *or it may simply seek to enforce the settlement agreement by petition or motion in the original action*." *Id.* at 136, 493 S.E.2d at 797 (emphasis added) (internal quotation marks omitted). *See also Crawford v. Tucker*, 258 Ala. 658, 663, 64 So.2d 411, 415 (Ala. 1953) (addressing merits of erroneously labeled motion to enforce settlement agreement as "it is immaterial what it is called" and noting that motion's "purpose was for this court to give effect to the alleged [settlement] agreement and we have so treated it").

Other jurisdictions have treated motions to enforce settlement agreements as motions for summary judgment. *See, e.g., Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991) (applying summary judgment standard to motion for enforcement of settlement agreement because

"[t]he stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same— both deprive a party of his right to be heard in the litigation"); *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008) ("The standard of review for enforcement motions is similar to the standard applicable for motions for summary judgment."); *DeRossett Enters., Inc. v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 728, 621 S.E.2d 755, 756 (2005) ("Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, 'a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the [appellant's] case.' " (quoting *Superglass Windshield Repair v. Mitchell*, 233 Ga. App. 200, 200, 504 S.E.2d 38, 39 (1998)); *Hays v. Monticello Ret. Estates, L.L.C.*, 192 P.3d 1279, 1281 (Okla. Civ. App. 2008) ("A motion to enforce a settlement agreement is treated as a motion for summary judgment.").

We find the reasoning of these cases persuasive and consistent with North Carolina practice and, therefore, apply the summary judgment standard of review. It is well-settled that the standard of review for an order granting a motion for summary judgment requires a two-part analysis of "whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). The moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). The evidence produced by the parties is viewed in the light most favorable to the non-moving party. *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

## Motion to Enforce Settlement Agreement

Hardin argues that the trial court erred in enforcing the settlement agreement because, he asserts, (1) it was procured by fraud, (2) there has been a failure of consideration to support the agreement, (3) material breaches of the agreement entitle him to rescission, and (4) his obligation to dismiss his complaint never arose due to the non-occurrence of certain conditions precedent. We address each contention in turn.

## A. *Fraud*

**[3]** Hardin first contends that the trial court erred in dismissing his claims based on its determination that "the Settlement Agreement is valid and enforceable[.]" Hardin maintains that the settlement agreement is unenforceable due to fraud, arguing that "misrepresentations or concealment of material facts by [defendants] induced [him] to sign a contract that he would not have signed but for the deception."

The essential elements of fraud are: " '(1) False representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005) (alteration original) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). A claim for fraud may be based on an "affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (internal citation omitted), *disc. review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986).

Hardin primarily claims defendants failed to disclose a material fact, arguing that the settlement agreement should be set aside because defendants did not disclose that his boat had been damaged in transit before it was sold to him. Hardin asserts that he would not have entered into the settlement agreement had he known of the pre-sale shipping damage.

"A duty to disclose arises where: (1) 'a fiduciary relationship exists between the parties to the transaction'; (2) there is no fiduciary relationship and 'a party has taken affirmative steps to conceal material facts from the other'; and (3) there is no fiduciary relationship and 'one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.' " *Sidden v. Mailman*, 137 N.C. App. 669, 675, 529 S.E.2d 266, 270-71 (2000) (quoting *Harton*, 81 N.C. App. at 297-98, 344 S.E.2d at 119). Hardin relies only on the third circumstance: when one party has knowledge of a latent defect.

Hardin presented evidence and argues that defendants had knowledge of the latent defect—the pre-sale damage—and that Hardin was ignorant of the collision. Hardin's argument ignores,

however, the requirement that he be unable to discover the defect through reasonable diligence. This requirement is particularly important when, as here, the parties were engaging in arms-length negotiations. As our Supreme Court has stressed: " 'When the parties deal at arms length and [one party] has full opportunity to make inquiry but neglects to do so and the [other party] resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie.' " *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 543, 356 S.E.2d 578, 583 (1987) (quoting *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E.2d 881, 885-86 (1957)).

In this case, it is particularly significant that any failure to disclose with respect to the settlement agreement arose in the course of on-going litigation. No negotiation could be more arms length. *See Lancaster v. Lancaster*, 138 N.C. App. 459, 463, 530 S.E.2d 82, 85 (2000) (holding that although a husband and wife generally share a confidential relationship entailing a duty to disclose, "this relationship ends when the parties become adversaries"). In this case, Hardin had served a request for production of documents that ultimately, when Hardin failed to dismiss his action, resulted in the production of documents informing him of the collision. Thus, if Hardin had waited until after preliminary discovery had taken place, he would have obtained the very information that he claims defendants had a duty to disclose to him during settlement negotiations. Hardin has not, therefore, shown that he lacked the ability to discover through due diligence—civil discovery procedures—the information that his boat was involved in a collision during shipping.

Hardin cites no authority—and we have found none—requiring opposing parties in litigation to disclose information adverse to their positions when engaged in settlement negotiations. Such a requirement would be contrary to encouraging settlements. One of the reasons that a party may choose to settle before discovery has been completed is to avoid the opposing party's learning of information that might adversely affect settlement negotiations. The opposing party assumes the risk that he or she does not know all of the facts favorable to his or her position when choosing to enter into a settlement prior to discovery. On the other hand, the opposing party may also have information it would prefer not to disclose prior to settlement.

Indeed, in *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 584, 581 S.E.2d 68, 73, *disc. review denied*, 357 N.C. 507, 587 S.E.2d 672 (2003), this Court explained that a party in the

"adversarial setting" of settlement negotiations does not "have an affirmative duty to disclose unfavorable facts." In *Piedmont Inst. of Pain Mgmt.*, *id.* at 585, 581 S.E.2d at 73-74, this Court held that because the parties seeking to avoid the settlement agreement had the opportunity to obtain the documents supporting their fraud claim from another party's counsel before executing the settlement agreement, they had "failed to exercise due diligence in uncovering the alleged fraud" for purposes of the statute of limitations.

That reasoning applies equally in this case. Hardin had the ability by virtue of the civil discovery rules to obtain from defendants—prior to entering into the settlement agreement—information about the pre-sale collision. Hardin, therefore, could have, through the exercise of due diligence, learned of the supposed latent defect. *See Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 205, 675 S.E.2d 46, 53 (2009) (holding summary judgment on fraud claim was proper where evidence indicated that plaintiff had "unfettered access" and "ample opportunity to inspect" land that was subject of claim); *MacFadden v. Louf,* 182 N.C. App. 745, 749, 643 S.E.2d 432, 435 (2007) (concluding there was no reasonable reliance where home buyer, "[n]otwithstanding the recommendations of her own inspection report, . . . elected to forego any further inquiry [into the home] and consummated the contract" to purchase).

This Court's opinion in *Talton v. Mac Tools, Inc.*, 118 N.C. App. 87, 453 S.E.2d 563 (1995), provides further support for the trial court's entry of judgment enforcing the settlement agreement. The plaintiffs in *Talton* terminated a distributorship with the defendants, and the defendants sued. *Id.* at 88-89, 453 S.E.2d at 564. The parties then entered into a settlement agreement that contained a mutual release providing that " '[i]t is the specific intent of this Mutual Release to release and discharge any and all claims and causes of action of any kind or nature whatsoever which may exist, might be claimed to exist, or could have been claimed to exist by Mac Tools, Inc. against [plaintiffs] and by [plaintiffs] against Mac Tools, Inc. . . . .' " *Id.* at 89, 453 S.E.2d at 564. Subsequently, the plaintiffs sued the defendants, alleging that the defendants had breached the distributorship agreement and had fraudulently induced the plaintiffs to enter into the distributorship agreement. *Id.* The plaintiffs alleged in their complaint that they did not learn of the facts that supported their claims until after the mutual release had been signed. *Id.* The defendants moved for summary judgment based on the settlement agreement and release. *Id.* In response, the plaintiffs claimed, as Hardin does here,

that they would not have signed the mutual release if they had known of the misrepresentations relating to the distributorship agreement.

On appeal from the trial court's grant of summary judgment to the defendants, the plaintiffs in *Talton* argued that "a genuine issue of fact exists as to whether or not defendants fraudulently procured the release." *Id.* at 90, 453 S.E.2d at 565. This Court rejected the plaintiffs' fraud argument, holding:

> Plaintiffs agreed to release defendants "from any and all claims" which are "in any manner related to the transaction which is the operation by [the plaintiff] of a Mac Tools distributorship, . . . whether direct or contingent, liquidated or unliquidated, including but not limited to any stated or unstated claims." Since this language was broad enough to cover all possible causes of action, whether or not the possible claims are all known, plaintiffs cannot rely on their ignorance of facts giving rise to a claim for fraud as a basis for avoiding the release.

*Id.* at 90-91, 453 S.E.2d at 565. *See also Merrimon v. Postal Telegraph-Cable Co.*, 207 N.C. 101, 105-06, 176 S.E. 246, 248 (1934) (" 'The language in a release may be broad enough to cover all demands and rights to demand or possible causes of action, a complete discharge of liability from one to another, whether or not the various demands or claims have been discussed or mentioned, and whether or not the possible claims are all known.' " (quoting *Houston v. Trower*, 297 F. 558, 561 (8th Cir. 1924))).

In this case, Hardin entered into a "general release of all claims that HARDIN may have against CRUISERS, CAPE FEAR, and VOLVO as a result of their dealings to date, and specifically including but not limited to the subject matter of this Agreement and the Civil Action . . . ." " '[A] comprehensively phrased general release, in the absence of proof of contrary intent, is usually held to discharge all claims . . . between the parties.' " *Koch v. Bell, Lewis & Assocs., Inc.*, 176 N.C. App. 736, 741, 627 S.E.2d 636, 639 (2006) (quoting *Sykes v. Keiltex Indus., Inc.*, 123 N.C. App. 482, 473 S.E.2d 341 (1996)).

The general release at issue in this case, by its terms, encompasses *all claims* related to the subject matter of the underlying lawsuit—the boat—and, therefore, necessarily encompasses Hardin's claim that defendants fraudulently concealed the boat's collision with the tree. *See Sims v. Gernandt*, 341 N.C. 162, 165, 459 S.E.2d 258, 260 (1995) (holding that release of " 'any responsibility [of defendant]

whatsoever, of any kind' " for Honda-Civic released plaintiff's claim that defendant, prior to plaintiff's signing release, fraudulently concealed damage he had caused to car). The language of the release in this case is broad enough to encompass all known and unknown claims. *See Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 394-95, 594 S.E.2d 37, 42-43 (2004) (after noting "[o]ur courts have . . . long recognized that parties may release existing but unknown claims," court held that "when the parties stated that they were releasing 'all claims of any kind,' we must construe the release to mean precisely that: an intent to release all claims of any kind in existence").

Hardin chose to forego discovery, settle his claims, and enter into this general release. Like the plaintiffs in *Talton*, he cannot now avoid the release by arguing that subsequent to signing the release, he learned of facts that would have persuaded him to not sign the release when he has not demonstrated that defendants had any duty to disclose those facts.

**[4]** Hardin also contends that Cruisers failed to disclose during settlement negotiations information about how the future repairs would be performed.[2] In making this argument, however, Hardin does not point to any misrepresentation or concealment by Cruisers of a *past* or *existing* material fact—an essential element of fraud—but rather argues that Cruisers did not disclose that it would not properly perform the repairs.

As this Court has explained, "[n]ormally, a promissory misrepresentation will not support an allegation of fraud." *Leake v. Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 204, 377 S.E.2d 285, 288-89, *disc. review denied*, 324 N.C. 578, 381 S.E.2d 774 (1989). When, however, "a promissory misrepresentation is made with an intent to deceive the purchaser and at the time of making the misrepresentation the defendant has no intention of performing his promise, fraud may be found." *Id.* at 204-05, 377 S.E.2d at 289. Nonetheless, mere proof that a party did not ultimately comply with the contract is not sufficient to establish that the party did not intend, at the time it entered into the contract, to perform under the contract. *Williams v. Williams*, 220 N.C. 806, 811, 18 S.E.2d 364, 367 (1942) (holding that plaintiff failed to present evidence warranting inference that defendant did not intend to perform her promise at time she made promise).

---

2. This argument does not apply to defendant Cape Fear.

Here, Hardin has presented no evidence that Cruisers did not intend, at the time it entered into the settlement agreement, to properly perform the repairs other than evidence that Hardin was dissatisfied with the repairs as they were in fact performed. Without evidence of Cruisers' intent at the time it entered into the settlement agreement, Hardin has failed to forecast sufficient evidence of fraud to defeat summary judgment.

**[5]** Hardin next contends that he was induced to enter into the separation agreement by an affirmative misrepresentation. Hardin claims that Wayne Canning, the marine surveyor who was designated in the settlement agreement as the person who would inspect the boat after the repairs, was fraudulently misrepresented as being "independent" from Cruisers.[3] With respect to this misrepresentation, Hardin stated the following in his affidavit:

> 4. . . . [T]he Settlement Agreement called for an "independent surveyor" to ensure the required repairs were completed in a good and workmanlike manner. *Cruisers and its attorney represented* that Mr. Canning, who ultimately was identified in the Settlement Agreement, was an independent surveyor. Based on this representation, I agreed to Mr. Canning as the "independent surveyor."
>
> . . . .
>
> 7. In addition to representing that Wayne Canning was an "independent surveyor," *Cruisers represented to me* that Mr. Canning would ensure that all the repairs necessitated by the Settlement Agreement were completed in a good and workmanlike manner. I relied upon these representations in agreeing to the Settlement Agreement.
>
> . . . .
>
> 10. I reasonably relied upon *Cruisers' representations*—specifically, that Mr. Canning was an independent surveyor, and that Mr. Canning would be called upon to ensure, for me, that the specific repairs called for by the Settlement Agreement were completed in a proper manner—in entering into the Settlement Agreement. Had I known that Mr. Canning was not independent, and was Cruisers' in-house surveyor, and that all Cruisers intended to have Mr. Canning do was a general marine survey

---

3. Hardin does not assert that Cape Fear made any representations about Canning, and, therefore, this argument does not apply to Cape Fear.

HARDIN v. KCS INT'L, INC.

[199 N.C. App. 687 (2009)]

of the Boat that did not even address the specific issues and repairs set forth in the Settlement Agreement, I *never* would have entered into the Settlement Agreement. These misrepresentations by Cruisers induced me to enter into the Settlement Agreement.

(Emphasis added; 4th emphasis original.) Hardin presented no other information on this issue.

In his affidavit; Hardin failed to identify any specific statement made by anyone. Hardin did not identify which attorney or which person at Cruisers made a statement about Canning being an independent surveyor. He did not describe what specifically was said. And, he did not identify when any statements were made other than that the time frame was prior to execution of the settlement agreement. These omissions are fatal to Hardin's claim for fraud based on representations regarding Canning.

As our Supreme Court has held, "[t]here is a requirement of specificity as to the element of a representation made by the alleged defrauder[:] 'The representation must be definite and specific . . . .' " *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992) (quoting *Johnson v. Owens*, 263 N.C. 754, 756, 140 S.E.2d 311, 313 (1965)). The Supreme Court in *Rowan County Board of Education* explained the purpose of this requirement: "Requiring proof of a specific representation facilitates courts in distinguishing mere puffing, guesses, or assertions of opinions from representations of material facts." *Id.*

Rule 9(b) of the Rules of Civil Procedure requires that "the circumstances constituting fraud . . . shall be stated with particularity" in the complaint. *See Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 220 (1979) (holding, in affirming dismissal of fraud claim, that "the pleader in such a situation must allege specifically the individuals who made the misrepresentations of material fact, the time the alleged misstatements were made, and the place or occasion at which they were made"). This Court has held that when a complaint against a corporation fails to allege, as required by Rule 9(b), the time and occasion of the misrepresentation and the individual who made the misrepresentation, then "summary judgment was proper" for failure to allege "the essential elements of fraud with particularity." *Trull v. Central Carolina Bank & Trust Co.*, 117 N.C. App. 220, 224, 450 S.E.2d 542, 545 (1994), *disc. review denied*, 339 N.C. 621, 454 S.E.2d 267 (1995). *See also Leake*, 93 N.C. App. at

205, 377 S.E.2d at 289 (affirming summary judgment on fraudulent misrepresentation claim when plaintiffs failed to allege defendants' intent at the time alleged fraudulent misrepresentations were made and thus failed to satisfy Rule 9(b)).

Thus, because Hardin failed to set forth evidence specifically identifying the misrepresentations upon which he relied, he failed to present sufficient evidence of fraud. Consequently, we hold that Hardin presented insufficient evidence to warrant setting aside the settlement agreement based on fraud.

## B. *Failure of Consideration*

[6] Hardin next contends that because defendants failed to complete the repairs as specified by the settlement agreement, he did not receive the consideration for which he bargained. Although Hardin focuses on the boat's repairs as the consideration, our Supreme Court has explained that the resolution of litigation is the consideration supporting a settlement agreement:

> The rule is established that an agreement to compromise and settle disputed matters is valid and binding. The law favors the avoidance or adjustment of litigation, and a compromise made in good faith for such a purpose will be sustained as not only based upon a sufficient consideration but upon the highest considera-tion of public policy as well, and this, too, without any special regard to the special merits of the controversy or the character or validity of the claims of the respective parties. The real consider-ation which each party receives, in contemplation of law, under the settlement, is not to be found so much in the mutual sacrifice of any rights, as in the bare fact that they have settled their dis-pute, which is considered to be of interest and value to each one of them. They give and take, so to speak, not knowing precisely what will be the outcome if they should bring their controversy to the test of the law and subject it to the uncertainties of litigation. Under such circumstances, there is no good reason why the mutual concessions of the parties, resulting in a settlement of their dispute, should not be upheld.

> . . . [T]he prevention of litigation is a valid and adequate con-sideration, for the law favors the settlement of disputes, and on this ground a mutual compromise is sustained. It is not only a suf-ficient, but a highly favored consideration, and no investigation into the character or relative value of the different claims

involved will be entered into for the purpose of setting aside a compromise, if, of course, the parties are engaged in a lawful transaction, it being enough if the parties to the agreement thought at the time that there was a question between them—an actual controversy—without regard to what may afterwards turn out to have been an inequality of consideration.

*York v. Westall*, 143 N.C. 276, 279-80, 55 S.E. 724, 725 (1906) (internal citation omitted). *See also Bohannon v. Trotman*, 214 N.C. 706, 720, 200 S.E. 852, 860 (1939) (" 'Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights of parties; the consideration of each agreement is not only valuable, but highly meritorious.' " (quoting *Armstrong v. Polakavetz*, 191 N.C. 731, 734-35, 133 S.E. 16, 18 (1926)). Thus, in this case, the settlement agreement between Hardin and defendants is supported in part by consideration in the form of the resolution of the litigation concerning the boat.

Citing *Gore v. George J. Ball, Inc.*, 279 N.C. 192, 182 S.E.2d 389 (1971), and *Pool v. Pinehurst, Inc.*, 215 N.C. 667, 2 S.E.2d 871 (1939), Hardin contends that the failure of consideration in this case is a defense to enforcing the settlement agreement, entitling him to rescission. *See Gore*, 279 N.C. at 199, 182 S.E.2d at 393 ("Failure of consideration is a defense to an action brought upon a contract against the party who has not received the performance for which he bargained."); *Pool*, 215 N.C. at 668, 2 S.E.2d at 871-72 (holding that when a purchased article is so defective that it is not reasonably fit for its intended use, the buyer is entitled to recover from the seller for lack of consideration). Neither *Pool* nor *Gore* are apposite here; both cases involved contracts to purchase goods, rather than agreements to settle a legal controversy between the parties. *See Gore*, 279 N.C. at 200, 182 S.E.2d at 394 (holding delivery of incorrectly labeled seeds was breach of contract and not failure of consideration); *Pool*, 215 N.C. at 668, 2 S.E.2d at 872 (reversing trial court's grant of  nonsuit where plaintiff presented sufficient evidence that laundry boiler purchased from defendant per contract was worthless and not fit for use). As *York* holds, agreements to compromise and settle disputes, such as the one in this case, are supported by "real consideration" in the form of "the bare fact that [the parties] have settled their dispute, which is considered to be of interest and value to each one of them." 143 N.C. at 279, 55 S.E. at 725.

## C. *Rescission*

[7] Hardin next argues that he is entitled to have the settlement agreement rescinded, and thus not enforced, due to material and substantial breaches of the agreement by defendants. We note first that Hardin has made no argument on appeal that defendant Cape Fear failed to comply with the settlement agreement, and, therefore, this argument cannot form a basis for overturning the summary judgment order as to Cape Fear. With respect to Cruisers, Hardin contends that it breached the settlement agreement by "(1) failing to make required repairs; (2) failing to investigate and repair issues referenced in the Settlement Agreement . . . ; (3) making modifications to the Boat not called for by the Settlement Agreement; (4) failing to provide the alleged 'independent' marine surveyor with the information necessary for him to perform his task in a competent fashion; (5) influencing the results of the 'independent' surveyor's inspections; (6) otherwise intentionally manipulating the circumstances for the purpose of minimizing the repairs to the Boat; and (7) failing to pay [Hardin]'s relocation expenses."

In *Wilson v. Wilson*, 261 N.C. 40, 43, 134 S.E.2d 240, 242 (1964), the Supreme Court observed that "where there is a material breach of the contract going to the very heart of the instrument, the other party to the contract may elect to rescind and is not bound to seek relief at law by an award for damages." The Court explained further what constituted a material breach going to the heart of the contract: breach of a covenant that " 'is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted.' " *Id.*, 134 S.E.2d at 242-43 (quoting *Steak House, Inc. v. Barnett*, 65 So. 2d 736, 738 (1953)). The Court held that " '[a] breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages, or courts of equity may grant rescission in such instances *if the remedy at law will not be full and adequate.*' " *Id.*, 134 S.E.2d at 243 (emphasis added) (quoting *Steak House, Inc.*, 65 So. 2d at 738). In the absence of such a breach, "[t]he right to rescind does not exist . . . ." *Id. See also Childress v. C.W. Myers Trading Post, Inc.*, 247 N.C. 150, 156, 100 S.E.2d 391, 395 (1957) ("Not every breach of a contract justifies a cancellation and rescission. The breach must be so material as in effect to defeat the very terms of the contract.").

In this case, the terms of the settlement agreement itself defeat Hardin's claim that he is entitled to rescission based on Cruisers' breach of the settlement agreement. The agreement specifically provides for the exact scenario that occurred: "[T]his release provision is *not* intended to release or bar any future claims based upon any new warranty issues arising under any pre-existing warranty that has not yet expired, failure of the repairs required herein, breach of the new engine warranty or extended protection plan provided hereunder, or an action to otherwise enforce the terms of this Agreement." All of the breaches by Cruisers of the settlement agreement relied upon by Hardin to justify rescission fall within the scope of this provision authorizing Hardin to assert future claims, including through a new action to enforce the terms of the settlement agreement.

Because the agreement expressly anticipates further litigation arising out of disputes regarding compliance with the agreement, Hardin cannot show, as *Wilson* requires, 261 N.C. at 43, 134 S.E.2d at 242 (quoting *Steak House, Inc.*, 65 So. 2d at 738), that full satisfaction with the repairs was " 'such an indispensable part of what both parties intended' " that breach would amount to a breach of the entire contract warranting rescission. In light of this provision, we cannot conclude that the breaches asserted by Hardin are such " 'an essential part of the bargain that the failure . . . must be considered as destroying the entire contract . . . .' " *Id.* (quoting *Steak House, Inc.*, 65 So. 2d at 738).

As discussed above, the primary purpose of the settlement agreement—the heart of the agreement—was the resolution of the parties' litigation. This is not a case in which Cruisers refused to do any repairs on the boat after entering into the agreement. The evidence in the record indicates that defendants and Volvo did perform repairs, the boat was surveyed twice by Canning, and additional repairs were done. The parties' contract gave Hardin the right to seek enforcement of the settlement agreement's requirements or to seek damages for breach if he was not satisfied that Cruisers' efforts complied with the settlement agreement. As a result, Hardin was not entitled to rescission of the agreement. *See Reaves v. Hayes*, 174 N.C. App. 341, 344-45, 620 S.E.2d 726, 729 (2005) (holding that heart of contract was installation of a useable driveway and failure to comply with contract's terms regarding driveway's location and materials to be used did not "entirely deprive[]" party of what he bargained for); *McDaniel v. Bass-Smith Funeral Home, Inc.*, 80 N.C. App. 629, 635, 343 S.E.2d 228, 232 (1986) (although plaintiff presented evidence that

defendant sold her defective casket, because evidence was uncontra-dicted that defendant provided services under burial contract, includ-ing services in addition to providing casket, breach was not such essential part of bargain that entire contract was destroyed and, therefore, plaintiff could only seek damages and not rescission).[4]

### D. *Condition Precedent*

**[8]** In purported response to Cruisers' reliance on the provision of the mutual release referencing enforcement of the settlement agree-ment, including for inadequate repairs, Hardin argued, in his reply brief, for the first time, that the trial court erred in dismissing his claims because his obligation to dismiss the action was dependent on fulfillment of conditions precedent of " 'completion' of the required repairs, the 'independent' survey, and any 'further repairs identified by the survey.' " This argument is not purely responsive to Cruisers' brief, but rather is an affirmative contention as to why Hardin was not required to file a voluntary dismissal with prejudice of his claims and why, therefore, this Court should reverse the trial court.

The record on appeal suggests that Hardin did not make this con-dition precedent argument in the trial court in opposition to defend-ants' motions. N.C.R. App. P. 10(b)(1) provides that "[i]n order to pre-serve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the spe-cific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." As our Supreme Court has stressed, "a party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal." *Dogwood*, 362 N.C. at 195-96, 657 S.E.2d at 364.

In any event, in order to properly present the issue for appellate review, Hardin should have included the contention in his main brief. *See Oates v. N.C. Dep't of Corr.*, 114 N.C. App. 597, 600, 442 S.E.2d 542, 544 (1994) (holding that Court "will not entertain what amounts

---

4. We note further that "[w]here there is such a breach as permits a rescission, the parties are entitled to be placed in *status quo* . . . ." *Childress*, 247 N.C. at 156, 100 S.E.2d at 395. *See also Opsahl v. Pinehurst Inc.*, 81 N.C. App. 56, 65, 344 S.E.2d 68, 74 (1986) (" '[A]s a general rule, a party is not allowed to rescind where he is not in a posi-tion to put the other in *status quo* by restoring the consideration passed.' " (quoting *Bolich v. Prudential Ins. Co.*, 206 N.C. 144, 156, 173 S.E. 320, 327 (1934)), *disc. review improvidently allowed*, 319 N.C. 222, 353 S.E.2d 400 (1987). Hardin has not, however, explained how he would restore Cruisers—which has performed significant repairs, including the installation by Volvo of new engines—to the position it held prior to the signing of the settlement agreement.

to a new argument presented in th[e] reply brief"); *Golden Rule Ins. Co. v. Long*, 113 N.C. App. 187, 199, 439 S.E.2d 599, 606 (concluding appellant's reply brief could not "resurrect" abandoned claim where appellant had not raised issue in initial brief and appellee's brief did not address issue), *appeal dismissed and disc. review denied*, 335 N.C. 555, 439 S.E.2d 145 (1993); *Animal Prot. Soc'y of Durham, Inc. v. State*, 95 N.C. App. 258, 269, 382 S.E.2d 801, 808 (1989) (declining to address constitutional argument first raised in reply brief because "[t]he reply brief [is] intended to be a vehicle for responding to matters raised in the appellees' brief; it was not intended to be—and may not serve as—a means for raising entirely new matters").

By raising his condition precedent argument for the first time in his reply brief, Hardin has frustrated the adversarial process by depriving defendants of the opportunity to respond to his argument. *See Dogwood*, 362 N.C. at 200, 657 S.E.2d at 366-67 (identifying "frustrat[ion] [of] the adversarial process" as one factor for determining whether default under appellate rules is gross or substantial); *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (discouraging appellate courts from reviewing merits of appeal when review would leave appellee "without notice of the basis upon which an appellate court might rule"). This issue is not, therefore, properly before the Court.

We note, however, that while Hardin's condition precedent argument addresses whether he was required to dismiss his claims, it still does not address the general release that he signed—without any condition precedent—releasing the underlying claims that he has sought to resurrect. Hardin has not cited any authority suggesting that his refusal to voluntarily dismiss his action in any way negates the mutual general release.

By not dismissing the action, Hardin simply preserved his right to file a motion in the action to enforce the settlement agreement and obtain relief as to any breaches of the settlement agreement. As this Court has explained, a party has "two options in deciding how to specifically enforce the terms of the settlement agreement. [A party] could: (1) take a voluntary dismissal of his original action and then institute a new action on the contract, or (2) seek to enforce the settlement agreement by petition or motion in the *original* action." *Estate of Barber v. Guilford County Sheriff's Dep't*, 161 N.C. App. 658, 662, 589 S.E.2d 433, 436 (2003). " 'Even where a [party] is seeking to obtain some form of equitable relief, rather than a payment of money, he may obtain a judgment in accordance with the terms of a

compromise agreement and may thereby obtain whatever perform-ance the [other party] agreed to in the compromise agreement.' " *Howes*, 128 N.C. App. at 136-37, 493 S.E.2d at 797 (alterations origi-nal) (quoting 15 Am. Jur. 2d, *Compromise and Settlement* § 38).

Thus, even if Hardin was not required to voluntarily dismiss this action, that fact did not resurrect the claims he had chosen to release, but rather only preserved Hardin's ability to enforce the settlement agreement in this action rather than filing a new lawsuit. Hardin did not, however, seek enforcement of the settlement agreement, but rather sought to avoid it. The trial court, therefore, did not err in determining that Hardin's claims were barred by the release and dis-missing this action.

## Conclusion

In response to defendants' motions, Hardin could have filed a cross-motion to enforce the settlement agreement, but chose not to do so. Instead, he pursued the claims that had been released in the settlement agreement. We hold that Hardin has failed to present suf-ficient evidence to raise an issue of fact regarding the enforceability of the settlement agreement and its release. The trial court, therefore, did not err in granting defendants' motions to enforce the agreement and dismissing Hardin's action. This ruling does not, however, pre-clude Hardin from filing a separate action regarding breach and enforcement of the settlement agreement.

Affirmed.

Judges McGEE and BEASLEY concur.