Porter v. Ford, 2015 NCBC 92.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 3794

DANIEL S. PORTER; WILLIAM J.
BURNS; and PORTER AND BURNS,
LLC,

          Plaintiffs,

       v.

SUSIE K. FORD and COLSON, INC.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION ON MOTION TO
ENFORCE SETTLEMENT AGREEMENT**

{1} THIS MATTER is before the Court on Defendants' Motion to Enforce Settlement Agreement ("Motion"), which was filed on June 9, 2015, and argued on August 5, 2015, after full briefing. For the reasons discussed below, the Motion is DENIED.

*Maginnis Law, PLLC by Edward H. Maginnis for Plaintiffs.*

*Jordan Price Wall Gray Jones & Carlton, PLLC by Paul T. Flick and Lori P. Jones for Defendants.*

Gale, Chief Judge.

## I. NATURE OF THE MATTER BEFORE THE COURT

{2} Individual Plaintiffs Daniel S. Porter ("Porter") and William J. Burns ("Burns") are brothers-in-law who formed corporate Plaintiff Porter and Burns, LLC ("Porter & Burns") for the purposes of acquiring and operating business centers that were franchised by Sylvan Learning, Inc. ("Sylvan"). Sylvan is owned by corporate Defendant Colson, Inc. ("Colson") and operated by individual Defendant Susie K. Ford ("Ford"). Plaintiffs initiated this action on March 26, 2014, and filed an Amended Complaint on October 24, 2014.

{3} Defendants contend that the parties formed a binding settlement agreement when Plaintiffs' counsel made an oral offer during a phone call on April

20, 2015, and Defendants accepted that offer by e-mail on April 21, 2015.  Plaintiffs deny that their counsel made an offer that contained all the essential, material terms required to form a binding settlement agreement.

{4}     More specifically, Defendants claim that in the phone call with Plaintiffs' counsel on April 20, 2015, Plaintiffs' counsel indicated that his clients were willing to settle the matter in exchange for two things: (1) a cash payment of $15,000.00, and (2) an affidavit by Ford to memorialize her testimony regarding Sylvan's knowledge of a program known as "English in a Flash."  Plaintiffs admit that they proposed a settlement structure that consisted of a cash payment and an affidavit, but that any settlement based on this structure was dependent on a future agreement on the form and content of the affidavit and a review of any documents that Defendants could provide.

{5}     The Court concludes that there are genuine issues of material fact as to whether the parties intended to enter a settlement agreement, and therefore that the Motion should be denied.  The Court further concludes that these material issues should be severed for an early trial prior to proceeding with a trial on the underlying claims.

## II.     BACKGROUND

{6}     If a party seeks enforcement of a settlement agreement by a motion in a pending action, the motion is treated as a motion for summary judgment.  *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009).  The Court does not make findings of fact when ruling on a motion for summary judgment.  *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164−65 (1975).  However, to provide context, the Court summarizes the background of the case.

{7}     Ford operated three Sylvan centers that were franchised to Colson.  Plaintiffs contend that Ford is personally liable along with Colson.  Plaintiffs complained that Defendants made material and fraudulent representations with

the intent to induce Plaintiffs to purchase the centers, and that Plaintiffs suffered financial losses as a result of these representations and the resulting purchase.

{8}     In their Amended Complaint, Plaintiffs alleged new facts to support additional misrepresentation claims. Plaintiffs contend that they first learned about these additional facts and misrepresentations after they filed their initial Complaint. In particular, Plaintiffs allege in their Amended Complaint that Defendants' financial information was based on distorted income from the English in a Flash program, which Sylvan did not sponsor or authorize for its franchisees. Plaintiffs have further indicated in their briefing and affidavits that Sylvan denies any knowledge that Defendants operated this program.

{9}     The parties attended a court-ordered mediation session on November 21, 2014. At the time of mediation, Plaintiffs were represented by Parry & Tyndall, PLLC, with Alan Parry ("Parry") acting as lead counsel. The parties did not settle at mediation but the mediator did not declare an impasse. The mediator continued to assist the parties in their effort to reach an agreement for some period after the mediation. Ultimately, the parties' counsel conducted direct settlement negotiations without the mediator's involvement.

{10}    Parry filed an affidavit indicating that Plaintiffs' settlement considerations were animated in material part by Ford's insistence that Plaintiffs would have difficulty enforcing any judgment because of Defendants' limited financial ability to pay. Parry further testified that Plaintiffs considered bringing separate litigation against Sylvan.

{11}    Parry and Defendants' counsel Paul Flick ("Flick") continued settlement discussions in a phone call on April 20, 2015. Defendants contend that during this call, Plaintiffs offered to settle the litigation if Defendants agreed to two components: (1) a cash payment of $15,000.00, and (2) an affidavit by Ford to memorialize her testimony regarding Sylvan's knowledge of English in a Flash and any documents that Defendants had that reflected such knowledge. Defendants contend that the settlement was not conditioned on Plaintiffs first seeing and approving the content of that affidavit.

{12}     Flick's handwritten notes of the April 20, 2015, telephone conference reflect, "[a]ffidavit is critical to resolution . . . specifics of conversations/documents . . . documentary trail." (Flick Aff. Ex. A) (formatting altered). The notes conclude: "will take 15K now . . . [a]ffidavit @ programs." (Flick Aff. Ex. A) (formatting altered).

{13}     On April 21, 2015, Flick sent Parry an e-mail that stated:

> We have discussed your clients' settlement counter-offer with Mrs. Ford and we accept on her behalf the offer for her to pay a lump sum of $15,000.00 in conjunction with the execution of an acceptable settlement agreement[1] and to provide an affidavit that Sylvan knew of the outside programs in full and final resolution of the pending litigation.

(Flick Aff. Ex. B.)

{14}     Flick's e-mail then summarized specific facts that the affidavit would include, and Flick agreed to gather any available documents. The e-mail concludes: "I believe that this settlement is in the best interests of all involved. We will provide the documentation of the contract revenue for the Wilson, NC center with the affidavit." (Flick Aff. Ex. B.)

{15}     Defendants contend that a settlement was reached upon delivery of this e-mail, which Defendants characterize as an unconditional acceptance of the two material terms that Parry offered in the phone call on April 20, 2015. Specifically, Defendants contend that Parry's offer did not require any further negotiation about the substance or adequacy of the affidavit or supporting documentation, and that the settlement offer thus did not depend on further negotiation about the affidavit or supporting document.

{16}     Plaintiffs agree that Parry proposed a settlement structure that consisted of two components and that an agreement was reached on the financial component, but that no final agreement was ever reached on the affidavit and documentation that comprised the second component. Under Plaintiffs'

---

[1]  Neither party has contended that agreement as to the form of the settlement agreement was a material term of any settlement. *See Chappell v. Roth*, 353 N.C. 690, 694, 548 S.E.2d 499, 500 (2001).

interpretation of the April 20, 2015, phone call, Parry proposed that the parties proceed with preparing Ford's draft affidavit, which was to be supported by documentation, and that if Plaintiffs approved of the affidavit, all claims would be settled in exchange for the cash payment and the affidavit with supporting documents. Plaintiffs contend that because the substance of the affidavit was not yet known, the parties never had more than an "agreement to agree." (Pls.' Mem. Law Opp'n Defs.' Mot. Enforce Settlement Agreement 8.)

{17} Parry has testified as to his own construction of the April 20, 2015, telephone conversation, which he summarizes as follows:

> I indicated during that conversation that Plaintiffs would be willing to resolve the case under a framework that included two components: 1) financial compensation from Defendants to Plaintiffs in the form of a single payment of $15,000.00, to account for Ms. Ford's limited financial means (the "Financial Component"); and, most importantly, 2) Defendants would provide specific information and documents to Plaintiffs relating to Sylvan's connection with "English in a Flash." In that regard, Defendant Ford would be required to execute a sworn affidavit memorializing her testimony regarding Sylvan's knowledge of the "English in a Flash" program and attaching supporting documentation in her possession (the affidavit and supporting documents are referred to collectively as the "Sylvan Component"). At this point, I did not fully understood [sic] what specific information and documents Ms. Ford could provide regarding Sylvan's connection with "English in a Flash." We also discussed generally what facts and information would need to be provided to address the Sylvan Component of the settlement. Mr. Flick indicated that his client was willing to provide an affidavit along the lines requested, and that he would follow up with her to confirm the details and documents that might be able to be produced by her to support her affidavit. It was my understanding that Mr. Flick would thereafter provide proposed language for the affidavit for the review and approval by the Plaintiffs. The Sylvan Component was a material portion of the contemplated settlement agreement, and I conveyed to opposing counsel that it was critical to my clients' consideration of a settlement.

(Parry Aff. ¶ 8.)

{18} Defendants contend that Parry's testimony is fully consistent with their position that all Ford was required to do was to state under oath whatever information she had, and that Plaintiffs did not, expressly or by implication,

condition the settlement on their review of the affidavit. Defendants further contend that Plaintiffs' interest was to commit Ford to sworn testimony, and that Ford agreed.

{19} Plaintiffs counter that Flick's handwritten notes on the April 20, 2015, phone call, as well as Parry's affidavit, make clear that Plaintiffs' review and agreement to the actual form of the affidavit was critical to, and a condition of, Plaintiffs' agreement to settle.

{20} Plaintiffs further contend that correspondence between counsel after April 21, 2015, reflect that neither party believed that the case was conclusively settled when Flick sent his e-mail on April 21, 2015. They contend that, at best, Flick accepted the offer to negotiate a settlement based on a structure with two components, and that agreement had been reached only as to the cash component.

{21} On April 23, 2015, Parry responded to Flick's April 21, 2015, e-mail with the following message: "Thanks, Paul. With re: the affidavit, I think your proposed paragraph is a good start." (Parry Aff. Ex. B.) Parry then listed questions that he hoped the affidavit would address, followed by, "[W]e will let you know if we need additional language in the affidavit." (Parry Aff. Ex. B.) He also listed documents that "would need to be provided in order to resolve the Sylvan Component of the potential settlement." (Parry Aff. ¶ 10.)

{22} On April 29, 2015, Flick's partner, Lori Jones ("Jones"), sent Parry several documents with an indication that a draft affidavit would follow. (Parry Aff. Ex. C.) Jones sent Parry a draft affidavit by e-mail on April 30, 2015, with a draft settlement agreement that included the form of the affidavit as an attachment. (Parry Aff. Ex. D, Attach. 3.) A series of e-mails continued up to April 30, 2015.

{23} On May 7, 2015, Parry advised Jones that his "clients were no longer interested in pursuing a settlement under the framework that the parties had discussed previously, and that the mediation process was concluded." (Parry Aff. ¶ 15.) Parry concludes his affidavit with the statement that the documents and draft affidavit "[were] not acceptable to [his] clients." (Parry Aff. ¶ 15.)

{24} On May 14, 2015, new counsel for Plaintiffs e-mailed Flick to propose that the litigation move forward. Flick responded by e-mail and expressed his position that the case had been settled and that Defendants would, if necessary, file a motion to enforce the settlement. Defendants contend that the May 7, 2015, communication was not a withdrawal from the ongoing negotiations, but rather, an attempt to repudiate a final agreement that had already been reached.

{25} Defendants filed the present Motion on June 9, 2015. The Motion has been fully briefed and argued and is now ripe for disposition.

## III.   LEGAL STANDARD

{26} A party who seeks to enforce a settlement agreement has the option of bringing a separate action to enforce the agreement or making a motion in the pending action. *Hardin*, 199 N.C. App. at 694, 682 S.E.2d at 732. If the party seeks enforcement by a motion in the pending action, the motion is treated as a motion for summary judgment. *Id.* at 695, 682 S.E.2d at 733.

{27} In reviewing a motion for summary judgment, the trial court asks "whether, on the basis of materials supplied . . . , there [is] a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). The moving party must demonstrate that there is a lack of any triable issue of material fact. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). The materials supplied to the Court to support or oppose the motion to enforce must be viewed in the light most favorable to the nonmoving party. *Hardin*, 199 N.C. App. at 695, 682 S.E.2d at 733. If the Court concludes that uncontested facts demonstrate as a matter of law that an agreement was reached or not, it may resolve the matter summarily. However, if the Court finds that there is a material factual dispute as to whether the parties agreed on all material terms and intended to do so, it is proper to deny the motion and consider the appropriate procedure for resolving those contested issues of fact.

# IV.  ANALYSIS

{28}    While North Carolina policy encourages the out-of-court settlement of controversies, settlement agreements must satisfy the general principles of contract law.  *Chappell*, 353 N.C. at 692, 548 S.E.2d at 500.  For a settlement agreement to constitute a valid, binding contract, "the parties' 'minds must meet as to all the terms.  If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.'"  *Id.* (quoting *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)).  If an agreement on all material terms was reached, however, the parties are bound and may not later renounce the agreement.  *See Chaisson v. Simpson*, 195 N.C. App. 463, 475, 673 S.E.2d 149, 159 (2009).

{29}    Additional statutory standards control mediated settlement agreements.  One requirement is that the settlement agreement must be reduced to writing.  N.C. Gen. Stat. § 7A-38.3B(i)(1) (amended 2015).  Further, there is a strong presumption in favor of settlement when a written agreement is executed at a court-ordered mediation.  *Chappell v. Roth*, 141 N.C. App. 502, 505, 539 S.E.2d 666, 668 (2000) (noting the "strong presumption that a settlement agreement reached by the parties through court-ordered mediation under the guidance of a mediator is a valid contract"), *rev'd on other grounds*, 353 N.C. 690, 548 S.E.2d 499.

{30}    Here, although the parties attended mediation, the Court accepts Defendants' contention that if there was a settlement, it must have been reached outside of mediation and is therefore not governed by section 7A-38.3B(i)(1).  Oral settlement agreements can be enforced.  *Timber Integrated Invs., LLC v. Welch*, No. COA13-1034, 2014 N.C. App. LEXIS 736, at *11 (July 1, 2014).  The primary dispute raised by the Motion is whether Plaintiff intended to enter into a binding settlement agreement.

{31}    Offer and acceptance are necessary to the formation of a binding contract, and they must reflect that the parties intended to agree to the same thing and in the same sense as to all necessary terms.  *See Moore v. G&I VI Forest Hills GP, LLC*, No. COA13-3, 2013 N.C. App. LEXIS 1166, at *6–7 (Nov. 5, 2013).  The

Court must determine the parties' intent by first reviewing the language of the alleged agreement and the ends that the parties intended to achieve at the moment of the contract's execution. *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973). The Court may determine the intention of the parties by reviewing the circumstances surrounding the making of the agreement, including "the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed." *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 492, 219 S.E.2d 190, 196 (1975). The Court may also consider the manner by which the parties have carried out the contract since its execution. *Crowder Constr. Co. v. Kiser*, 134 N.C. App. 190, 200–01, 517 S.E.2d 178, 186 (1999).

{32} Here, to grant the Motion, the Court must find from uncontested facts that Plaintiffs intended to convey, and did convey, a settlement offer that required of the Defendants only the payment of $15,000.00 and delivery of an affidavit that details any information Ford may have regarding Sylvan's knowledge of Defendants' English in a Flash program, accompanied by any documents Defendants have in support of Ford's testimony, and that Defendants unconditionally accepted that offer without proposing additional terms. Likewise, if the Court finds that uncontested facts make clear that there was no offer and acceptance, it may grant summary judgment in Plaintiffs' favor.[2] However, if the Court determines that there are issues of material fact regarding the parties' intent, and there are facts from which a fact-finder may conclude that a contract was formed, the Motion should be denied and summary judgment should not be awarded in favor of either party.

{33} The Court finds that there are material facts from which a fact-finder could conclude that a binding settlement was reached, but that those facts are in dispute. The Court cannot determine as a matter of law whether Plaintiffs' settlement offer was conditioned on Plaintiffs' review and approval of the form of

---

[2] At oral argument, Plaintiffs expressed that they believed that the Court should not simply deny Defendants' Motion, but should instead find that no settlement agreement existed and enter summary judgment in their favor. Plaintiffs made no formal motion.

the affidavit and its supporting documentation. The Court concludes that the evidence is subject to more than one reasonable interpretation, and an evidentiary determination is required as to the parties' intent.

{34} The Court concludes, in its discretion and under Rule 42(b)(1) of the North Carolina Rules of Civil Procedure ("Rule(s)"), that it should sever the issue of whether the parties reached a settlement agreement from the merits of the underlying dispute, and that it should then conduct a separate trial that is limited to the issue of whether the parties entered into a binding settlement agreement. Discovery and other proceedings on the underlying merits should be stayed pending the completion of this initial trial.

{35} Accordingly,

1. Defendants' Motion to Enforce Settlement Agreement is DENIED;

2. Pursuant to Rule 42(b)(1), and in the exercise of its discretion, the Court severs the issue of whether the parties intended to enter a binding settlement agreement;

3. Further proceedings on the underlying merits of the claims are stayed; and

4. The parties shall confer and within twenty days of the date of this Order & Opinion submit a proposed scheduling order that (a) provides for any required pretrial discovery and motion practice limited to the issue of whether the parties reached a binding settlement agreement; (b) proposes dates on which the parties will be prepared to try that issue; and (c) the parties' positions as to whether the trial on this issue will be to the Court or to a jury.

IT IS SO ORDERED, this the 14th day of October, 2015.

/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases