# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

## RALEIGH

────────

CHARLOTTE MOTOR SPEEDWAY, LLC AND
SPEEDWAY MOTORSPORTS, INC., PLAINTIFFS
v.
COUNTY OF CABARRUS, DEFENDANT

No. COA12-1361

Filed 1 October 2013

1. **Trials—judicial notice—immaterial for Rule 12(b)(6) motion**

     Defendant's motion in a breach of contract case for the Court of Appeals to take judicial notice of several facts was denied. Generally, matters outside the complaint are not germane to a Rule 12(b)(6) motion.

2. **Contracts—breach of contract—specific performance—motion to dismiss—sufficiency of evidence—void for indefiniteness**

     The trial court did not err by dismissing plaintiffs' claims for breach of contract and specific performance even though plaintiffs contended that the amended complaint alleged a valid contract between the parties, based on a 21 November letter, and that the contract was breached by defendant County. The 21 November letter's silence on several key terms rendered it void for indefiniteness.

3. **Fraud—motion to dismiss—sufficiency of evidence**

     The trial court did not err by dismissing plaintiffs' fraud claim. There was no definite and specific representation that would be sufficient on these facts to support a claim for fraud.

1

**4. Fraud—negligence misrepresentation—motion to dismiss—sufficiency of evidence**

The trial court did not err by dismissing plaintiffs' negligent misrepresentation claim. Even assuming *arguendo* that defendant County owed plaintiffs a duty of care, there was no specific representation made by the County sufficient to form the basis for a negligent misrepresentation claim.

Appeal by Plaintiffs from order entered 21 March 2012 by Judge Robert C. Ervin in Cabarrus County Superior Court. Heard in the Court of Appeals 9 April 2013.

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, William K. Diehl, Jr., and John R. Buric, for plaintiffs-appellants.*

*Erwin, Bishop, Capitano & Moss, P.A., by J. Daniel Bishop and Matthew M. Holtgrewe; and Law Offices of Richard M. Koch, by Richard M. Koch, Cabarrus County Attorney, for defendant-appellee.*

DAVIS, Judge.

Charlotte Motor Speedway, LLC ("CMS") and Speedway Motorsports, Inc. ("SMI") (collectively "Plaintiffs") appeal from the trial court's order dismissing their amended complaint against Cabarrus County (the "County"). Plaintiffs primarily contend that they asserted a valid claim for breach of contract against the County in connection with an agreement between the parties concerning the continued presence of the Charlotte Motor Speedway ("the Speedway") in Cabarrus County and the construction of an adjacent racing facility. After careful review, we affirm the trial court's order.

**Factual Background**

In August 2007, O. Bruton Smith ("Smith"), the Chief Executive Officer of CMS and SMI, announced SMI's intention to construct a National Hot Rod Association-approved racing facility known as the "Dragway" on land adjacent to the Speedway within the County. In October 2007, the Concord City Council amended Concord's Unified Development Ordinance in a manner that would have prevented the Dragway from being built. Smith subsequently announced that SMI planned to relocate the Speedway — and construct the Dragway — outside of Cabarrus County.

**CHARLOTTE MOTOR SPEEDWAY, LLC v. CNTY. OF CABARRUS**

[230 N.C. App. 1 (2013)]

In response, the City Council repealed its zoning amendment so as to allow for the construction of the Dragway. On 20 November 2007, the County and Concord approached SMI and made a proposal to provide $60 million in funds to improve the infrastructure surrounding the Speedway and future Dragway. SMI rejected this proposal.[1]

On 21 November 2007, Robert Carruth ("Carruth"), the Chairman of the Cabarrus County Board of Commissioners, and Scott Padgett ("Padgett"), the Mayor of Concord, sent a letter dated 21 November 2007 ("the 21 November Letter") to Smith which stated, in pertinent part, as follows:

> Cabarrus County and the City of Concord are committed to providing $80,000,000 through local efforts for the financing, design and construction of road, pedestrian, utility and noise attenuation projects. The City and Cabarrus County concur that SMI's project list defines investments important to meeting your vision of creating the finest motorsports racing complex that includes a new drag strip facility and major improvements to Lowe's Motor Speedway.

> The commitment is to generate $80,000,000 for funding related infrastructure and transportation investments. However, we need an additional 36 months to secure $20,000,000 of this $80,000,000 from the State of North Carolina. If the $20,000,000 is not secured from the State in 36 months, our pledge is to provide it from other sources. Any contributions secured from the State or others, or projects that are constructed directly by the State, will be applied to the $80,000,000 commitment and will not be in addition to this amount.

> . . .

> It is intended that the financing of some of these projects making up the $80,000,000 be structured through a combination of tax based incentives and other incentive grants so SMI has the ability to impact the timing, cost and management of the construction projects. The balance will be funded by other City and County controlled revenues.

---

1. The amended complaint does not contain information regarding any additional terms of this proposal or the circumstances under which it was made. However, none of Plaintiffs' claims stem from or relate to this original proposal.

. . .

> We understand that all parties anticipate that the $80,000,000 will be formalized in an agreement that will also provide an outline of a schedule to prioritize projects and to identify the investment that SMI plans to make through the construction of the drag strip and improvements to Lowe's Motor Speedway.

. . .

> [T]he Cabarrus County Board of Commissioners and the Concord City Council are committed to partnering with you to make the public improvements necessary to address the long term transportation needs faced by the speedway and the community around it.

That same day, Smith called Padgett and told him that "we have an agreement." Carruth was also contacted by Smith's staff and informed that SMI had accepted the 21 November 2007 proposal.

Plaintiffs proceeded to construct the Dragway, which opened on 20 August 2008. A document entitled "Proposed Formal Agreement" was ultimately submitted by the County and Concord to Plaintiffs the following day. The proposed agreement contained terms requiring SMI to expend "tens of millions of dollars within only three years . . . but . . . allow[ing] the [County and Concord] up to forty years to reimburse SMI." SMI summarily rejected the proposed agreement on the grounds that it contained terms that were "never agreed upon or discussed and are wholly unreasonable."

Based on their dissatisfaction with the proposed agreement, Plaintiffs filed a lawsuit in Cabarrus County Superior Court against the County and Concord containing causes of action for (1) specific performance; (2) breach of contract; and (3) fraud or, in the alternative, negligent misrepresentation. On 28 May 2010, Plaintiffs voluntarily dismissed their original complaint, and on 29 June 2011, Plaintiffs filed an amended complaint asserting the same causes of action but naming Cabarrus County as the sole defendant.[2] Plaintiffs attached the 21 November Letter to the amended complaint and incorporated its terms by reference.

On 29 August 2011, the County filed an answer and motion to dismiss in which it sought dismissal of Plaintiffs' amended complaint

---

2. For this reason, Concord is not a party to this appeal.

pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure.

Following a hearing on the County's motion to dismiss, the trial court entered an order on 21 March 2012 granting the County's motion and dismissing all of Plaintiffs' claims with prejudice. Plaintiffs gave timely notice of appeal.

## Judicial Notice

[1] The County has filed a motion requesting that this Court take judicial notice of the following: (1) "comprehensive financial data" and records of the County and Concord; (2) property tax rates and tax revenues for the County and Concord in 2008; and (3) the absence of records showing the taking of action by the Cabarrus County Board of Commissioners or the Concord City Council at a public meeting to approve the 21 November Letter or to delegate authority to Carruth or Padgett to make a binding agreement with Plaintiffs.

In its motion, the County contends that taking judicial notice of the items described above "will harmonize the facts the Court may properly consider in reviewing the trial court's dismissal order under Rule 12(b)(6) . . . ." However, it is well established that "[t]he only purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleading against which it is directed." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 707 (2007) (citation and quotation marks omitted).[3] "As a general proposition, therefore, matters outside the complaint are not germane to a Rule 12(b)(6) motion." *Id.* Accordingly, we deny Defendant's request to take judicial notice of these facts.

## Analysis

## I.   Contract Claims

[2] We begin by addressing Plaintiffs' claims for breach of contract and specific performance. Plaintiffs contend that the trial court erred in dismissing these claims because the amended complaint alleged a valid contract between them and the County and that the contract was breached by the County.

---

3. The County's motion to dismiss was based on Rules 12(b)(1), (2), and (6), and the trial court's order does not specify which of these provisions of Rule 12 its order was based upon. However, as explained below, we believe that dismissal of this action was appropriate under Rule 12(b)(6), and we decline to address the County's arguments under Rules 12(b)(1) and (2).

When reviewing an order of dismissal for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), we assess the legal sufficiency of the complaint while taking all of the material factual allegations included therein as true. *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429, *appeal dismissed and disc. review denied*, 361 N.C. 425, 647 S.E.2d 98, *cert. denied*, 361 N.C. 690, 652 S.E.2d 257 (2007). "Legal conclusions, however, are not entitled to a presumption of validity." *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 33, 681 S.E.2d 465, 469 (2009). An allegation that a valid contract exists between parties is a legal conclusion. *See Guarascio v. New Hanover Health Network, Inc.*, 163 N.C. App 160, 165, 592 S.E.2d 612, 614 (holding that employee's assertion that valid employment contract existed between him and defendant was legal conclusion "not entitled to a presumption of truth") (citation and quotation marks omitted), *disc. review denied*, 358 N.C. 375, 597 S.E.2d 130 (2004).

Plaintiffs' claims for breach of contract and specific performance necessarily hinge on the threshold issue of whether a valid contract actually existed between them and the County. *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."); *McKinnon v. CV Indus., Inc.*, ___ N.C. App. ___, ___, 713 S.E.2d 495, 500 ("For a court to award specific performance, there must be a breach of a valid contract."), *disc. review denied*, 365 N.C. 353, 718 S.E.2d 376 (2011).

Plaintiffs attached to their amended complaint the 21 November Letter — the document that they contend formed a contract between them and the County — and repeatedly discussed its terms in their pleading. Specifically, Plaintiffs alleged that the 21 November Letter "standing alone is a valid and enforceable contract" in which the parties agreed that "in exchange for the economic incentives set forth in the [21 November Letter], SMI agreed to keep the Speedway in Concord and move forward with the Dragway." In ruling on the County's motion to dismiss, the trial court was permitted to consider this document to determine whether a contract did, in fact, exist between the parties. *See Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment."). Under such circumstances, a "trial court may reject allegations that are contradicted by documents attached to the complaint." *Id.* at 265, 672 S.E.2d at 553. Thus, in our review, we too

must examine the 21 November Letter to determine whether it contains the terms sufficient to establish a binding contract under North Carolina law and may reject allegations in Plaintiffs' amended complaint that are contradicted by the Letter.

Under longstanding North Carolina law, a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms. *Id.* at 265, 672 S.E.2d at 553. "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti,* 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995); *see MCB, Ltd. v. McGowan,* 86 N.C. App. 607, 608, 359 S.E.2d 50, 51 (1987) ("In North Carolina, one of the essential elements of every contract is mutuality of agreement. . . . [The Parties] must assent to the same thing in the same sense, and their minds must meet as to all the terms.") (citation, quotation marks, and alterations omitted). Indeed, "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Miller v. Rose,* 138 N.C. App. 582, 587-88, 532 S.E.2d 228, 232 (2000) (internal citations and quotation marks omitted).

We conclude that the 21 November Letter's silence on several key terms renders it void for indefiniteness and that, for this reason, the trial court correctly granted the County's motion to dismiss as to Plaintiffs' claims for breach of contract and specific performance. Most notably, the 21 November Letter is silent as to any specific obligation on the part of Plaintiffs and is unclear as to precisely when Defendant would be required to expend the $80 million. Moreover, the 21 November Letter itself notes the preliminary nature of the document by stating that "all parties anticipate that the $80,000,000 will be formalized in an agreement that will also provide an outline of a schedule to prioritize projects and to identify the investment that SMI plans to make through the construction of the drag strip and improvements to Lowe's Motor Speedway."

Thus, "the writing itself shows its incompleteness by emphasizing its preliminary character." *Boyce v. McMahan,* 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974). Indeed, the document makes clear the parties' contemplation that a future agreement between them would provide key terms left unexpressed in the 21 November Letter.

Our Supreme Court's decision in *Boyce* is instructive. In *Boyce,* the document at issue concerned the purchase, sale, and development of land and manifested the parties' "desire to enter into a preliminary

agreement setting out the main features as to the desires of both parties and to execute a more detailed agreement at a later date . . . ." *Id.* Our Supreme Court concluded that the writing did not amount to a valid contract because "a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." *Id.* The Court further explained that "[i]f any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.*

Our Court, citing *Boyce*, has similarly explained:

> Generally, a contract, or offer to contract, which leaves material portions open for future agreement is nugatory and void for indefiniteness. The reason is that if a preliminary contract fails to specify all of its material and essential terms so that some are left open for future negotiations, then there is no way by which a court can determine the resulting terms of such future negotiations.

*N.C. Nat'l Bank v. Wallens*, 26 N.C. App. 580, 583, 217 S.E.2d 12, 15, *cert denied*, 288 N.C. 393, 218 S.E.2d 466 (1975).

Perhaps the most basic term left undefined in the 21 November Letter is the consideration to be provided by Plaintiffs. It is wholly unclear what Plaintiffs were bound to do, or not do, by virtue of this document. While Plaintiffs argue that they "remained in Concord/Cabarrus" as a result of the 21 November Letter, their decision to do so was not a result of any legally binding provision in the document. There is no language in the 21 November Letter placing limits on Plaintiffs' ability to relocate or, for that matter, imposing any obligations on Plaintiffs at all. As the County notes, the 21 November Letter "does not identify any exchange, only the 'commitment' of the City and the County." As a result, had Plaintiffs actually abandoned Cabarrus County in favor of a different locale at any point in time after the 21 November Letter was sent, they would have been fully within their legal rights to do so and the County would have been powerless to stop them. Thus, on this ground alone, we conclude that the 21 November Letter is too indefinite to constitute a binding contract.

The 21 November Letter is also unclear as to when the County was expected to provide the $80 million in funding to Plaintiffs. Plaintiffs contend the County's statement that "we need an additional 36 months to secure $20,000,000 of this $80,000,000 from the State of North Carolina" indicated that the first $60,000,000 was "coming immediately." However, we do not believe that this interpretation is supported by the actual

language contained in the 21 November Letter. Rather, the language stating that "all parties anticipate that the $80,000,000 will be formalized in an agreement that will also provide an outline of a schedule to prioritize projects and to identify the investment that SMI plans to make . . ." shows that the timing of the provision of funding was — like the project list — left subject to the future, formalized agreement.

Although Plaintiffs attempt to draw support from prior cases holding that "a contract that the parties expect to formalize is not rendered invalid simply because the parties do not subsequently execute such a formal agreement," those cases still require the parties in the original contract to "assent to the same thing in the same sense, and their minds meet as to all terms." *Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 493, 606 S.E.2d 173, 177 (2004) (citation and quotation marks omitted); *see Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (discussing requirements of (1) a meeting of the minds as to all essential terms; and (2) "sufficiently definite and certain" terms when enforcing preliminary memorandum of settlement). That did not happen here. The 21 November Letter simply does not evidence a meeting of the minds as to basic terms that would have been fundamental to the existence of a valid contract under these circumstances.

We therefore conclude that Plaintiffs' amended complaint and the document attached thereto disclose "fact[s] that necessarily defeat[] the claim." *Peacock v. Shinn*, 139 N.C. App. 487, 492, 533 S.E.2d 842, 846, *appeal dismissed and disc. review denied*, 353 N.C. 267, 546 S.E.2d 110 (2000). Accordingly, Plaintiffs have failed to state claims for breach of contract or specific performance.

## II. Plaintiffs' Tort Claims

Plaintiffs also contend that the trial court erred in dismissing their tort claims for fraud or, in the alternative, negligent misrepresentation. In response, Defendant asserts that the trial court's dismissal of these claims was proper because (1) Plaintiffs failed to adequately allege all of the essential elements of these claims for purposes of Rule 12(b)(6); and (2) the tort claims are barred by Defendant's governmental immunity such that dismissal of these claims was proper pursuant to Rules 12(b)(1) and/or 12(b)(2). Because we hold that Plaintiffs have failed to state a valid claim for relief under Rule 12(b)(6) with regard to their tort claims, we need not address the issue of governmental immunity. *See Howard v. Cty. of Durham*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2013 WL 1878933 at *6 (May 7, 2013) ("Because we conclude that plaintiff has failed to state a claim [under Rule 12(b)(6)], we do not address the immunity issues raised by the parties.").

### A. Fraud Claim

**[3]** The elements of a civil cause of action for fraud are (1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party. *Jones v. Harrelson & Smith Contr'rs, LLC*, 194 N.C. App. 203, 214, 670 S.E.2d 242, 250 (2008), *aff'd per curiam*, 363 N.C. 371, 677 S.E.2d 453 (2009). "[I]n order to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must allege with particularity all material facts and circumstances constituting the fraud, although intent and knowledge may be averred generally." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905, 910 (2002). Thus, "there is a requirement of specificity as to the element of a representation made by the alleged defrauder: The representation must be definite and specific." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 702, 682 S.E.2d 726, 737 (2009) (citation, quotation marks, and alteration omitted).

Here, Plaintiffs' amended complaint alleges that the County "made false representations of material fact and concealed material facts regarding the Local Governments' ability to fund the promised amounts" by representing "that the Local Governments could and would allocate $60 million in fewer or no more than 36 months and the additional $20 million in approximately 36 months for public infrastructure related to the Speedway . . . ." However, as discussed above, the 21 November Letter — upon which Plaintiffs specifically base the allegations supporting their fraud claim — does not, in actuality, articulate a definitive time frame for the County's funding contribution. As such, we are unable to discern any "definite and specific" representation therein that would be sufficient on these facts to support a claim for fraud. Accordingly, we conclude that the trial court correctly dismissed this claim.

### B. Negligent Misrepresentation

**[4]** A cause of action for negligent misrepresentation arises "when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Walker v. Town of Stoneville*, 211 N.C. App. 24, 31, 712 S.E.2d 239, 244 (2011) (citation and quotation marks omitted). In pleading their claim for negligent misrepresentation, Plaintiffs once more seek to rely on the 21 November Letter, arguing that the County — through Carruth — represented "that the Local Governments could and would allocate $60 million in fewer and no more than 36 months and the additional

$20 million in approximately 36 months" and that Cabarrus "failed to exercise reasonable care or competence in obtaining or communicating [this] false information." We disagree.

Here too, the actual language of the 21 November Letter dooms Plaintiff's claim. The language in the 21 November Letter regarding funding was indefinite and lacked specificity regarding when the money would be paid and how it was to be spent. Thus, even assuming *arguendo* that the County owed Plaintiffs a duty of care, there was no specific representation made by the County sufficient to form the basis for a negligent misrepresentation claim. Therefore, this claim was likewise properly dismissed by the trial court.

### Conclusion

For the reasons stated above, we affirm the trial court's order dismissing Plaintiffs' amended complaint.

AFFIRMED.

Judges McGEE and GEER concur.