Baker v. Bowden, 2017 NCBC 30.

STATE OF NORTH CAROLINA

STOKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 235

ROBERT LEE BAKER d/b/a THE
LAWNMOWER MEDIC,

Plaintiff,

v.

TIMOTHY M. BOWDEN d/b/a
MOBILE LAWNMOWER MEDIC
and T.M. BOWDEN, INC.,

Defendants.

ORDER AND OPINION ON PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT
AGREEMENT

1.      **THIS MATTER** is before the Court on Plaintiff Robert Lee Baker's ("Plaintiff" or "Baker") motion to enforce settlement agreement (the "Motion") filed on February 20, 2017.  The Motion seeks to enforce a purported settlement agreement set forth in e-mails between Plaintiff's counsel ("Mr. Sloan") and Defendants' counsel ("Mr. Harlow").  For the reasons set forth below, the Court hereby **DENIES** the Motion and **GRANTS** summary judgment for Defendants that no enforceable settlement agreement was formed.

*Norman L. Sloan, for Plaintiff.*

*Manning, Fulton & Skinner, P.A., by David A. Harlow and J. Whitfield Gibson, for Defendants.*

Robinson, Judge.

## I.      PROCEDURAL HISTORY

2.      The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

3.      On April 11, 2016, Plaintiff commenced this action by filing his Complaint. This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated April 18, 2016 and assigned to Chief Business Court Judge James L. Gale by order dated April 19, 2016. This case was later reassigned to the undersigned by order dated July 5, 2016.

4.      On January 13, 2017, Defendants filed their answer.

5.      On February 20, 2017, Plaintiff filed the Motion and brief in support.

6.      Pursuant to Rules 3.9 and 7.6 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), Defendants had twenty-three days from the date on which Plaintiff filed his supporting brief to file a response brief. Defendants filed their response brief in opposition to the Motion on March 15, 2017. Therefore, Defendants' response brief was timely filed.

7.      On March 23, 2017, Plaintiff filed his reply brief. The Motion is now ripe for resolution. Pursuant to BCR 7.4, the Court, in its discretion, dispenses with oral argument and rules on the Motion without a hearing.

## II.    FACTUAL BACKGROUND

8.      On December 12, 2016, Mr. Harlow e-mailed Mr. Sloan ("Mr. Harlow's First E-mail") stating, in relevant part,

> I have a counteroffer that I think and hope will resolve this. I don't think there is anything more here.
>
> 1 – [Defendant] Bowden would transition to a new trademark – not confusingly similar – within one year. . . .
>
> 2 – Commencing as soon as commercially practical, and continuing until December 31, 2018, [Defendant] Bowden will maintain his current

domain name as a neutral landing page which will direct traffic to websites for the two respective businesses in the manner we discussed. After December 31, 2018, the domain name will be disabled and not used by either business.

3 – In order to facilitate avoiding confusion in the marketplace, [Plaintiff] Baker will endeavor to use commercially reasonable efforts to purchase, activate and use the Go Daddy currently parked domain name that is [Plaintiff] Baker's trademark, and use this as his website domain name.

4 – [Defendant] Bowden will pay [Plaintiff] Baker the sum of $2000 in four equal quarterly payments of $500 each, with the first payment no later than March 31, 2017.

(Pl.'s Mot. Ex. A, at 3.)

9. On December 13, 2016, Mr. Sloan replied to Mr. Harlow's First E-mail ("Mr. Sloan's First E-mail") stating, in relevant part,

Your number 1 is acceptable, with notice of what trademark will be adopted in place of the current trademark by your client.

Number 2 is not and would be acceptable if it continued to maintain the current domain as a neutral landing page as you set out with the detail, until December 31, 2017. At such time, we would desire an assignment of the domain rights and control of this domain to my client.

Number 3 is not acceptable.

Number 4 is acceptable if the amount of $3,000 is paid no later than March 1, 2017.

(Pl.'s Mot. Ex. A, at 1.)

10. On January 3, 2017 at 4:44 p.m., Mr. Harlow replied to Mr. Sloan's First E-mail ("Mr. Harlow's Second E-mail") stating, in relevant part,

I've met with my client, and I will set out our counteroffer as follows.

1 – I think we have agreement on #1.

2 – Our prior offer stands as is. . . . The neutral landing page can be for this calendar year, and then be deactivated.  My client is not going to turn over control of the domain name.

3 – It seems silly for your client not to acquire his own mark as a domain name, but we will drop this condition.

4 – If all other matters are resolved, #4 is acceptable.

(Pl.'s Mot. Ex. A, at 5.)

11.    On January 4, 2017 at 12:34 p.m., Mr. Sloan e-mailed Mr. Harlow ("Mr. Sloan's Second E-mail") stating that Plaintiff wanted until Monday, January 9, 2017 to consider the terms in Mr. Harlow's Second E-mail.  (Pl.'s Mot. Ex. A, at 9.)  Less than an hour later, Mr. Harlow replied to Mr. Sloan's Second E-mail ("Mr. Harlow's Third E-mail") stating, in relevant part, "[e]ven if we have an agreement in principal, we still have to have a written settlement agreement[.]"  (Pl.'s Mot. Ex. A, at 9.)  Later that evening, at 8:39 p.m., Mr. Sloan replied to Mr. Harlow's Third E-mail ("Mr. Sloan's Third E-mail") stating that he would call Mr. Harlow the following day and he thought they might have a deal.  (Pl.'s Mot. Ex. A, at 8.)

12.    On January 5, 2017 at 11:23 a.m., Mr. Harlow replied to Mr. Sloan's Third E-mail ("Mr. Harlow's Fourth E-mail") and stated

in the interim since yesterday afternoon my client is actually having second thoughts about his offer, so I'm not sure it's still on the table.  I'm not saying it isn't, but I need to talk with him and see if I can work him through this.  I'll let you know later this afternoon.

(Pl.'s Mot. Ex. A, at 8.)  Less than ten minutes later, Mr. Sloan replied to Mr. Harlow's Fourth E-mail ("Mr. Sloan's Fourth E-mail"), "[w]ell, that is unfortunate.  My client accepts the offer."  (Pl.'s Mot. Ex. A, at 8.)

13. Later on January 5, 2017, at 2:01 p.m., Mr. Harlow e-mailed Mr. Sloan stating, "[a]s I indicated this morning, my client had second thoughts about his offer after it was not initially accepted. He has withdrawn the offer." (Defs.' Resp. Opp'n Ex. C, at 1.)

## III. LEGAL STANDARD

14. A party seeking to enforce a settlement agreement may either file a motion in the pending action or bring a separate proceeding to enforce the agreement. *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694, 682 S.E.2d 726, 732 (2009). North Carolina courts apply the summary judgment standard of review to a motion to enforce a settlement agreement. *Id.* at 695, 682 S.E.2d at 733; *Boyd v. Avello*, 2016 NCBC LEXIS 71, at *6 (N.C. Super. Ct. Sept. 16, 2016). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c); *Joslyn v. Blanchard*, 149 N.C. App. 625, 628, 561 S.E.2d 534, 536 (2002). In ruling on a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011); *Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *7 (N.C. Super. Ct. Jan. 29, 2016).

15. "Summary judgment, when appropriate, may be rendered against the moving party." N.C. Gen. Stat. § 1A-1, Rule 56(c); *Brooks v. Hackney*, 329 N.C. 166, 170 n.2, 404 S.E.2d 854, 857 n.2 (1991).

## IV. ANALYSIS

16. Plaintiff has elected to seek enforcement of the alleged settlement agreement by motion in the pending action. The Court grants summary judgment in favor of Defendants that, to the extent an offer existed on January 5, 2017, Mr. Harlow's Fourth E-mail was a valid revocation of that offer. As alternative grounds for denying the Motion, the Court finds that genuine issues of material fact exist regarding: (1) mutual assent, and (2) Plaintiff's obligations under the purported settlement agreement.

17. The Court initially notes that the materials relied upon by Plaintiff and Defendants are documents that generally are not considered by a court in ruling on a motion for summary judgment. "On a motion for summary judgment the court may consider evidence consisting of affidavits, depositions, answers to interrogatories, admissions, documentary materials, facts which are subject to judicial notice, and any other materials which would be admissible in evidence at trial." *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 161–62 (1976). Neither Plaintiff nor Defendants challenged the propriety of the Court's consideration of the e-mail chains submitted by the parties. In fact, all parties ask the Court to consider them. As a result, the Court will consider the e-mail chains submitted by the parties in ruling on the Motion. Additionally, in his reply brief, Plaintiff refers to and relies on

statements purportedly made between Plaintiff and the mediator during the mediated settlement conference. These alleged statements are not in the record before the Court and are thus not properly considered by the Court in ruling on the Motion.

18. "A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). A valid contract requires assent, mutuality of obligation, and definite terms. *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013). "For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (internal quotation marks omitted) (quoting *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)). Although North Carolina courts favor settlement of claims without judicial intervention, "given the consensual nature of any settlement, a court cannot compel compliance with terms not agreed upon[.]" *Id.*

19. "The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980). "[T]here must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense . . . ." *Miller v. Rose*, 138 N.C. App. 582, 588, 532 S.E.2d 228, 232 (2000)

(quoting *MCB Ltd. v. McGowan*, 86 N.C. App. 607, 608–09, 359 S.E.2d 50, 51 (1987)). Mutual assent is typically established by offer and acceptance. *Snyder*, 300 N.C. at 218, 266 S.E.2d at 602. An offer must include the material terms of a contract and be so complete that an agreement is formed upon the offeree's acceptance. *Elks v. N. State Ins. Co.*, 159 N.C. 619, 625–26, 75 S.E. 808, 811 (1912); *see Stewart v. Occidental Life Ins. Co.*, 20 N.C. App. 25, 29, 200 S.E.2d 434, 436 (1973). After an offer is communicated, it remains open until it lapses or is accepted, rejected, or revoked. Restatement (Second) of Contracts § 36(1) (Am. Law Inst. 1981). To determine whether mutual assent exists, a court considers the parties' words and acts from the perspective of a reasonable person. *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962). If the Court finds that there is a genuine issue of material fact regarding whether the parties agreed to all material terms of the settlement agreement, the Court must deny the Motion. *Porter v. Ford*, 2015 NCBC LEXIS 96, at *12 (N.C. Super. Ct. Oct. 14, 2015).

20. The North Carolina Business Court has considered motions to enforce a settlement agreement multiple times. *See Ray Lackey Enters., Inc.*, 2016 NCBC LEXIS 9, at *19–20 (concluding there was no enforceable settlement agreement because the parties did not satisfy the express condition of "signed definite agreements" and the e-mail negotiations did not show the parties' mutual assent); *Porter*, 2015 NCBC LEXIS 96, at *15–16 (severing the issue of whether there was a binding settlement agreement because there was a genuine issue of material fact as to whether a binding settlement agreement was reached); *McCarthy v. Hampton*,

2015 NCBC LEXIS 70, at \*28–29 (N.C. Super. Ct. July 1, 2015) (enforcing a settlement agreement that contained all material terms and was signed by the parties); *DeCristoforo v. Givens*, 2015 NCBC LEXIS 56, at \*35 (N.C. Super. Ct. May 29, 2015) (granting a motion to enforce a settlement agreement).

A.      No Contract Was Formed due to Revocation

21.     The Court finds that no genuine issue of material fact exists regarding the language of Mr. Harlow's Fourth E-mail and that the language is a revocation of any offer previously made on behalf of Defendants as a matter of law.  Therefore, the Court grants summary judgment in favor of Defendants that no binding settlement agreement exists because Mr. Harlow's Fourth E-mail revoked any offer set forth in Mr. Harlow's Second E-mail.

22.     "[A]n offer is generally freely revocable and can be countermanded by the offeror at any time before it has been accepted by the offeree." *Normile v. Miller*, 313 N.C. 98, 109, 326 S.E.2d 11, 18 (1985) (citing Restatement (Second) of Contracts § 42).  An offer may be revoked directly when the offeror communicates to the offeree a manifestation of an intention not to enter into the contract.  *Id.*; Restatement (Second) of Contracts § 42.  "The word 'revoke' is not essential to a revocation.  Any clear manifestation of unwillingness to enter into the proposed bargain is sufficient." Restatement (Second) of Contracts § 42 cmt. d.  In an example, the Restatement demonstrates that an offer is revoked when an offeror states, "Well, I don't know if we are ready.  We have not decided, we might not want to go through with it." *Id.* §

42 cmt. d, illus. 5 (based on *Hoover Motor Express Co. v. Clements Paper Co.*, 241 S.W.2d 851 (Tenn. 1951)).

23.     Plaintiff argues that Mr. Harlow's Fourth E-mail was not a valid revocation because Mr. Harlow "never said [the counteroffer] was withdrawn" and stated "I'm not saying [the counteroffer] isn't [on the table]." (Pl.'s Reply 4).  However, Plaintiff's position does not take into account the other language of Mr. Harlow's Fourth E-mail that clearly manifested Defendants' unwillingness to enter into the purported settlement agreement.  This language includes the statements that "my client is actually having second thoughts, so I'm not sure [the counteroffer is] still on the table" and "I need to talk with him and see if I can work him through this."  As discussed above, revocation does not require an explicit statement that the offer is revoked—a valid revocation is effected by communicating a manifestation of the offeror's unwillingness to enter into the proposed contract.  The language of Mr. Harlow's Fourth E-mail is analogous to the language in the Restatement's example, as both Mr. Harlow's statement and the statement in the example communicate that the offeror has doubt with respect to, and is reconsidering, his initial offer.  Therefore, the Court concludes, as a matter of law, that Mr. Harlow's Fourth E-mail was a valid revocation of the counteroffer contained in Mr. Harlow's Second E-mail, assuming such e-mail was a valid counteroffer.  Thus, summary judgment should be granted in Defendants' favor on this issue.

B.    An Issue of Material Fact Exists Regarding Mutual Assent

24.    Notwithstanding the Court's conclusion that Mr. Harlow effectively revoked Defendants' counteroffer, as alternative ground for denying the Motion, the Court concludes that there is a genuine issue of material fact as to whether the e-mails between Mr. Sloan and Mr. Harlow, from the perspective of a reasonable person, manifest the parties' mutual assent. Mr. Harlow's Third E-mail stated that the parties would need a final written settlement agreement and expressly conveyed concern regarding Plaintiff's request to delay responding to the terms offered by stating "I think we are pushing the timing if we want to get this settled." (Pl.'s Mot. Ex. A, at 9.) Mr. Harlow's Fourth E-mail the following morning—which the Court has already concluded was a valid revocation—undoubtedly communicated that Defendants were having second thoughts and that Mr. Harlow needed to see if he could work Defendants through their concerns. Further, the language in Mr. Sloan's Fourth E-mail, "[w]ell, that is unfortunate," indicates that Plaintiff was aware that Defendants no longer assented to the same terms. Therefore, the Court concludes that Plaintiff has failed to satisfy his burden to show that there is no genuine issue of material fact as to whether the parties mutually assented to the terms set forth in Mr. Harlow's Second E-mail.

C.    An Issue of Material Fact Exists Regarding Plaintiff's Consideration

25.    Assuming *arguendo* that there was mutual assent and no valid revocation, as a further alternative ground for denying the Motion, the Court concludes that although Mr. Harlow's Second E-mail includes three specific terms, certain material

terms essential to the purported settlement agreement were undetermined. A contract must "specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974). If a contract leaves material terms open for future agreement, it "is nugatory and void for indefiniteness." *Id.*

26.     Plaintiff points to Mr. Harlow's Second E-mail, and its incorporation of Mr. Harlow's First E-mail and Mr. Sloan's First E-mail, to support his claim that the parties have agreed to all material terms of a final settlement agreement. Mr. Harlow's Second E-mail includes only three terms: (1) Defendants would transition to a new trademark, (2) Defendants would operate their domain as a neutral landing page through December 31, 2017 and then deactivate the domain, and (3) "if all other matters are resolved," Defendant Bowden would pay $3,000 to Plaintiff. (Pl.'s Mot. Ex. A, at 1.) Plaintiff argues that the three terms in Mr. Harlow's Second E-mail constitute all of the material terms necessary to an enforceable settlement agreement. (Pl.'s Mot. 4–5).

27.     The Court concludes that these terms do not encompass all of the material terms necessary to support the existence of a binding settlement agreement. The terms outlined in the e-mails do not evidence any obligations of, or the consideration provided by, Plaintiff; rather, all of the terms set forth the obligations of Defendants. Plaintiff argues that the dismissal of Plaintiff's action was "inherent" to any settlement and a "foregone conclusion" and that, therefore, the parties did not need to include any term referencing dismissal of the action. (Pl.'s Reply 3.) However,

Plaintiff has the burden of establishing that the parties have agreed to all material terms, and Plaintiff has not offered any evidence regarding Plaintiff's obligations or consideration under the purported settlement agreement.

28. Further, it is well settled under North Carolina law that the Court is to interpret and enforce a contract as written. *State v. Philip Morris USA Inc.*, 363 N.C. 623, 631–32, 685 S.E.2d 85, 90–91 (2009). The Court is not to look beyond the terms of a contract unless the contract is ambiguous. *Id.* at 636, 685 S.E.2d at 93. Thus, the Court cannot imply as a term of the purported settlement agreement that Plaintiff was obligated to dismiss the action based merely on Plaintiff's contentions in its brief that dismissal of the action was inherent and a foregone conclusion.

29. In sum, the Court denies the Motion and grants summary judgment in favor of non-movant Defendants that no enforceable settlement agreement was reached because Mr. Harlow's Fourth E-mail was a valid revocation of any offer in Mr. Harlow's Second E-mail as a matter of law. As alternate grounds for denying the Motion, the Court concludes that Plaintiff has failed to satisfy his burden to show that there is no genuine issue as to any material fact regarding: (1) whether there was mutual assent, and (2) Plaintiff's obligations under the purported settlement agreement.

## V. CONCLUSION

30. For the foregoing reasons, the Motion is hereby **DENIED**. The Court **GRANTS** summary judgment in favor of Defendants that no enforceable settlement agreement was formed between the parties on January 5, 2017.

**SO ORDERED**, this the 3rd day of April, 2017.

/s/ Michael L. Robinson
_____

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases