Horne Heating & Air Conditioning Co. v. Horne, 2017 NCBC 94.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 21608

HORNE HEATING & AIR
CONDITIONING CO.,

             Plaintiff,

v.

PATRICIA S. HORNE and THE
ESTATE OF ELVERSON C.
HORNE, JR,

             Defendants.

**ORDER AND OPINION DENYING IN
PART AND GRANTING IN PART
DEFENDANTS' MOTIONS TO
DISMISS**

1.      **THIS MATTER** is before the Court upon Defendants Patricia S. Horne's ("Ms. Horne") and the Estate of Elverson C. Horne, Jr.'s ("the Estate," collectively "Defendants") separate Motions to Dismiss (the "Motions") portions of Plaintiff Horne Heating & Air Conditioning Co.'s ("Plaintiff") Amended Complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

2.      Having considered the Motions, the briefs in support of and in opposition to the Motions, and the arguments of counsel at a September 19, 2017 hearing on the Motions, the Court hereby **DENIES in part** and **GRANTS in part** the Motions to Dismiss.

> *Marcellino & Tyson, PLLC, by Matthew Marcellino and Wesley Rainer, for Plaintiff Horne Heating & Air Conditioning Co.*
>
> *Hull & Chandler, P.A., by Andrew Brendle, for Defendants Patricia S. Horne and The Estate of Elverson C. Horne, Jr.*

Bledsoe, Judge.

I.

FACTUAL BACKGROUND

3. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the Amended Complaint and the contract that is the subject of the Amended Complaint.

4. Plaintiff is a corporation duly organized and existing under the laws of the State of North Carolina with an office and principal place of business in Mecklenburg County, North Carolina. (Am. Compl. ¶ 1, ECF No. 1.) Until March 13, 2016, Plaintiff had two shareholders: Elverson C. Horne, Jr. ("Mr. Horne"), holder of ninety-nine of Plaintiff's one hundred outstanding shares, and his son, Jonathon D. Horne ("Jonathon Horne"), the holder of the remaining share of Plaintiff's stock. (Am. Compl. ¶ 3, 8; Compl. Ex. A, ECF No. 32.)

5. Plaintiff alleges that "[o]n December 20, 1990, Plaintiff caused to be issued a policy of insurance by [Prudential] bearing number 98 259 072 in the face amount of $500,000.00 upon the life of [Mr. Horne]" (the "Policy"). (Am. Compl. ¶ 7.) Plaintiff alleges that "the beneficiary of the Policy was [Plaintiff]." (Am. Compl. ¶ 7.) Plaintiff asserts that the "purpose of the acquisition of the Policy was to fund the redemption of [Plaintiff's] stock upon the death of the shareholder [Mr. Horne] and to provide additional working capital to Plaintiff." (Am. Compl. ¶ 8.)

6. Plaintiff also alleges that "on February 13, 1991, Plaintiff, [Mr. Horne] and [Jonathon Horne] executed a Stock Redemption Agreement" (the "Agreement"). (Am. Compl. ¶ 9.) According to Plaintiff, the Agreement "provides, *inter alia*, that Plaintiff

shall be the beneficiary of the Policy and for the redemption of all shares of a stockholder upon his death using the death benefit proceeds, to the extent necessary, payable under the Policy to Plaintiff." (Am. Compl. ¶ 9.) Although at issuance the Policy identified Mr. Horne as the owner, and Plaintiff as the beneficiary, the Agreement specifically provided that Plaintiff "shall be the owner of any policy or policies of insurance acquired pursuant to the terms of this Agreement[.]" (Compl. Ex. A, Art. 6B.) The Agreement further stated that Plaintiff "shall be named as beneficiary of any such policies." (Compl. Ex. A., Art. 6B.)

7.     Plaintiff contends that in early 2016, and with Mr. Horne's death imminent, Mr. and Ms. Horne improperly caused the beneficiary of the Policy to be changed from Plaintiff to Ms. Horne "without the permission, consent or approval of Plaintiff." (Am. Compl. ¶ 14.) Mr. Horne subsequently died on March 13, 2016, and Prudential thereafter paid the net death benefit of $470,000 to Ms. Horne. (Am. Compl. ¶ 3, 15.) Plaintiff seeks to recover these funds through this action.

II.

PROCEDURAL BACKGROUND

8.     Plaintiff filed its complaint ("Complaint") on December 2, 2016, asserting claims against Ms. Horne and the Estate. On May 12, 2017, Plaintiff filed an Amended Complaint ("Amended Complaint"), adding new allegations and claims and joining as defendants Greg Sheets, Greg W.C. Sheets & Associates, LLC (the "Sheets Defendants"), and Prudential Insurance Company of America ("Prudential"). Plaintiff voluntarily dismissed its claims against the Sheets Defendants on

September 18, 2017 and against Prudential on September 19, 2017. Ms. Horne and the Estate are the only defendants remaining in the case.

9. Among its various claims, Plaintiff seeks to recover against (i) the Estate for Mr. Horne's alleged breach of the Agreement, (ii) Ms. Horne for her alleged tortious interference with that same Agreement, and (iii) Ms. Horne and the Estate for their alleged conversion of the Policy proceeds. (Am. Compl. ¶¶ 18–23, 42–44.) Ms. Horne and the Estate moved to dismiss these specific claims through separate Motions to Dismiss filed on July 13, 2017. (ECF Nos. 15, 16.)

10. The Court held a hearing on the Motions on September 19, 2017, at which all parties were represented by counsel. At the conclusion of the hearing, the Court announced that it would enter a written order granting Defendants' separate Motions seeking dismissal of Plaintiff's conversion claim but denying the Estate's Motion to Dismiss Plaintiff's breach of contract claim and denying Ms. Horne's Motion to Dismiss Plaintiff's claim for tortious interference with contract.

11. The Court enters this Order and Opinion to memorialize its oral rulings at the September 19 hearing.

III.

ANALYSIS

A. Standard of Review

12. In deciding a Rule 12(b)(6) motion, the Court's inquiry is "whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."

*Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004); *see Sutton v. Duke*, 277 N.C. 94, 98–99, 176 S.E.2d 161, 163 (1970). The Court views the facts pleaded and permissible inferences in a light most favorable to the non-moving party. *Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 473, 665 S.E.2d 526, 531 (2008). In addition, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers[.]" *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Dismissal under Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; or (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

B.  Breach of Contract Against the Estate

13.  Plaintiff contends that Mr. Horne breached the Agreement by changing the Policy beneficiary without Plaintiff's consent or approval. (Am. Compl. ¶¶ 18–20.) The Estate argues that Plaintiff's breach of contract claim should be dismissed because Plaintiff failed to plead the existence of a valid contract between Plaintiff and Mr. Horne, and, in particular, failed to use the specific words "valid contract" anywhere in its Amended Complaint. (Defs.' Br. Supp. Mot. Dismiss 3–4, ECF No. 17.) The Estate's argument is without merit.

14.  In order to state a claim for breach of contract, a plaintiff must adequately allege the existence of a valid contract and the breach of the terms of that contract.

*Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 6, 748 S.E.2d 171, 175 (2013). In North Carolina, "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Id.* at 7, 748 S.E.2d at 176; *see also Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995) ("It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement."). Mutual assent is often understood as a "meeting of the minds," occurring when the parties demonstrate an intent to be bound by definite terms. *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007).

15. Here, Plaintiff specifically alleged that "Plaintiff, [Mr. Horne] and [Jonathon Horne] executed [the] Stock Redemption Agreement[.]" (Am. Compl. ¶ 9.) Plaintiff attached the Agreement to the original Complaint and "incorporated it by reference as if fully set forth herein" in the Amended Complaint.[1] (Compl. Ex. A; Am. Compl. ¶ 9.) The Agreement is notarized and signed under seal by Plaintiff, Mr. Horne, and Jonathon Horne. It contains nine pages of detailed provisions setting forth the parties' respective obligations concerning Plaintiff's purchase of Mr. Horne's and Jonathon Horne's stock upon death as well as the parties' agreement concerning the

---

[1] Contrary to the Estate's contention, it is of no consequence on this Motion that Plaintiff inadvertently failed to attach the Stock Purchase Agreement to the Amended Complaint. *See, e.g., Shaw v. Gee*, 2016 NCBC LEXIS 103, at *2, n.1 (N.C. Super. Ct. Dec. 21, 2016) (concluding consideration of two exhibits attached to original complaint but not to amended complaint did not convert Rule 12(b)(6) motion to one under Rule 56; *see also Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004) ("Since the exhibits to the complaint were expressly incorporated by reference in the complaint, they were properly considered in connection with the motion to dismiss as part of the pleadings.").

funding for Plaintiff's purchase of a deceased shareholder's stock. As such, the Stock Purchase Agreement plainly reflects assent, mutuality of obligation, and definite terms—the required elements of a valid and binding contract.

16. The Estate's contention that the words "valid contract" must be specifically pleaded simply has no basis in law. *See, e.g.*, *Stellar Ins. Grp., Inc. v. Cent. Cos., LLC*, No. 2:06cv11, 2006 U.S. Dist. LEXIS 75801, at *23 (W.D.N.C. 2006) (holding that "there are no magic words for pleading [a contract claim under North Carolina law]") (citing *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)); *cf. Feltman v. City of Wilson*, 238 N.C. App. 246, 253–54, 767 S.E.2d 615, 621 (2014) (rejecting "magic words" such as "but for" to plead causation).

17. In paragraphs 19 and 20 of the Amended Complaint, Plaintiff refers to the Stock Purchase Agreement as a "contract" and alleges that Mr. Horne "breached the terms and provisions of" that document. Plaintiff's allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6).

C. <u>Tortious Interference with Contract Against Ms. Horne</u>

18. Plaintiff premises its tortious interference claim on its contention that Ms. Horne induced Mr. Horne to breach the Stock Purchase Agreement by changing the beneficiary of the Policy from Plaintiff to Ms. Horne. (Am. Compl. ¶¶ 21–23.) Like the Estate in challenging Plaintiff's breach of contract claim, however, Ms. Horne argues that the tortious interference claim must fail because Plaintiff failed to allege the existence of a valid contract. (Defs.' Br. Supp. Mot. Dismiss 3–4.) Ms. Horne's argument necessarily fails for the same reasons discussed in Section B above.

D.    Conversion Against the Estate and Ms. Horne

19.    Plaintiff's conversion claim is premised on its contention that Mr. and Ms. Horne wrongfully caused Ms. Horne to be substituted for Plaintiff as the beneficiary of the Policy and to thereafter receive the Policy proceeds that would have otherwise been paid to Plaintiff.  (Am. Compl. ¶¶ 42–44.)  As pleaded, the interest Plaintiff contends that Defendants converted was not the Policy's net death benefit itself, but rather Plaintiff's right to recover the Policy's net proceeds as the Policy's properly designated beneficiary.  Such an interest is a contract right, which our courts have deemed an intangible interest under North Carolina law.  *See Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 583, 541 S.E.2d 157, 166 (2000) (recognizing "intangible assets" include "contract rights").

20.    North Carolina law is clear that "intangible interests such as business opportunities and expectancy interests" are not subject to a conversion claim. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) (holding that "only goods and personal property are properly the subjects of a claim for conversion").  Accordingly, Plaintiff's conversion claim necessarily fails as a matter of law.  *See, e.g.*, *Gottfried v. Covington*, 2014 NCBC LEXIS 26, at *19 (N.C. Super. Ct. June 25, 2014) (holding that right to receive royalties under written agreement constitutes an "intangible, contractual expectancy" that is "not subject to a claim for conversion").

IV.

CONCLUSION

21. **WHEREFORE**, for the foregoing reasons, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' Motions as follows:

a. The Estate's motion to dismiss Plaintiff's breach of contract claim is **DENIED**.

b. Ms. Horne's motion to dismiss Plaintiff's tortious interference with contractual relations claim is **DENIED**.

c. Defendants' respective Motions to Dismiss Plaintiff's conversion claim are **GRANTED**, and Plaintiff's conversion claim against each Defendant is hereby **DISMISSED** with prejudice.

**SO ORDERED**, this the 11th day of October, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases