Edwards v. PFA Architects, P.A., 2017 NCBC 55.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| BUNCOMBE COUNTY | 17 CVS 1176 |

EUGENE S. EDWARDS, III,
individually and as shareholder in
PFA Architects, P.A.,

      Plaintiff,

v.

PFA ARCHITECTS, P.A.; SCOTT T.
DONALD; and MARTHA VIRGINIA
CARNEVALE,

      Defendants.

**ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION TO
DISMISS AND PLAINTIFF'S MOTION
TO DISQUALIFY AND TO STRIKE**

1.    **THIS MATTER** is before the Court on Defendants PFA Architects, P.A. ("PFA"), Scott T. Donald ("Donald"), and Martha Virginia Carnevale's ("Carnevale") (collectively, the "Defendants") Partial Motion to Dismiss (the "Motion to Dismiss") and Plaintiff Eugene S. Edwards, III's ("Plaintiff" or "Edwards") Motion for Disqualification of Counsel and Motion to Strike (the "Motion to Disqualify") (collectively, the "Motions"). Having considered the Motions, the briefs in support of, and opposition to, the Motions, and the arguments of counsel at a hearing on the Motions, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion to Disqualify.

*Craig Law Firm, PLLC, by Sam B. Craig, for Plaintiff.*

*Cloninger Barbour Searson Jones & Cash, PLLC, by Stephen L. Cash
and W. Scott Jones, for Defendants.*

Robinson, Judge.

## I.    PROCEDURAL BACKGROUND

2.    The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

3.    Plaintiff initiated this action by filing his Verified Complaint (the "Complaint") on March 15, 2017 asserting both direct claims and derivative claims as a shareholder of PFA.

4.    The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated March 16, 2017 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale that same day.

5.    On April 13, 2017, Defendants, jointly represented by Stephen L. Cash ("Mr. Cash") and W. Scott Jones ("Mr. Jones") of Cloninger Barbour Searson Jones & Cash, PLLC, filed their Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

6.    On May 2, 2017, Plaintiff filed his Motion to Disqualify seeking to disqualify Mr. Cash and Mr. Jones from representing PFA in this action and, upon disqualification, to strike the Motion to Dismiss filed by Mr. Cash and Mr. Jones.

7.    The Motions have been fully briefed, and the Court held a hearing on the Motions on June 28, 2017.  The Motions are now ripe for resolution.

## II. FACTUAL BACKGROUND

8. The Court does not make findings of fact on the Motion to Dismiss under Rule 12(b)(6), but only recites those factual allegations of the Complaint that are relevant and necessary to the Court's determination of the Motion to Dismiss.

9. PFA, previously known as Padgett & Freeman, Architects, P.A., is a North Carolina professional corporation with its principal place of business in Buncombe County, North Carolina. (Verified Compl. ¶¶ 2, 8 [hereinafter Compl.].)

10. Donald owns a 44.9% interest in PFA and is the current president and secretary of PFA. (Compl. ¶¶ 14, 59(b).)

11. Carnevale owns a 10.2% interest in PFA and is the current vice president and treasurer of PFA. (Compl. ¶¶ 14, 59(b).)

12. Edwards owns a 44.9% interest in PFA and is a former employee and the former president and managing partner of PFA. (Compl. ¶¶ 12, 14–15.)

13. On February 1, 2010, Edwards signed an Employment Agreement with PFA. (Compl. ¶ 12(a).) The Employment Agreement states that PFA "shall, if economically feasible, provide severance benefits to [Edwards] upon his[] retirement. Such retirement package may be, but is not required to be, commensurate with retirement packages previously provided to retiring architects." (Compl. Ex. A, at ¶ 12 [hereinafter Employment Agreement].)

14. Also on February 1, 2010, Edward, Donald, Carnevale, and Michael M. Freeman, the then-shareholders of PFA, entered into a Stockholders' Agreement. (Compl. ¶ 12(b).) The Stockholders' Agreement states that upon the termination of a

stockholder's employment for any reason, all PFA shares owned by that stockholder shall be sold by him and purchased by PFA or the stockholders as provided therein. (Compl. Ex. B, at ¶ 1(a) [hereinafter Stockholders' Agreement].)  Paragraph 1(c) of the Stockholders' Agreement provides that a stockholder who wants to sell or transfer his PFA shares (the "Transferor") shall provide PFA and the other stockholders with a written offer to sell all the Transferor's PFA shares.  (Stockholders' Agreement ¶ 1(c).)  Paragraph 1(d)(i) of the Stockholders' Agreement states the following:

> Within thirty (30) days after the receipt of the offer called for in [paragraph 1(c)], [PFA] may elect to purchase all, but not less than all, of the shares of the Capital Stock of [PFA] owned by the Transferor. [PFA] shall exercise its election to purchase by giving notice thereof to the Transferor and to the other Stockholders.  The notice shall specify a date for the closing of the purchase by [PFA] which shall not be more than thirty (30) days after the date of the giving of such notice.

(Stockholders' Agreement ¶ 1(d)(i).)

15.    As to the purchase price of the Transferor's shares of PFA stock, the Stockholders' Agreement provides:

> 3. PURCHASE PRICE.  The price of the Capital Stock to be purchased under the terms of this Agreement shall be the "adjusted book value" of [PFA], determined as of the end of the month preceding termination or death by the Certified Public Accountant ("CPA") regularly employed by [PFA] . . . .
>
> The adjusted book value shall based [sic] on the information shown on [PFA]'s books as of the last day of the end of the month preceding termination or death.

(Stockholders' Agreement ¶ 3.)

16.    On May 3, 2016, Edwards informed Donald and Carnevale that he planned to work through the end of 2018 and then retire.  (Compl. ¶ 17.)

17. Edwards alleges that Donald and Carnevale insisted that Edwards retire earlier than the end of 2018. (Compl. ¶ 17.) Edwards further alleges that after he informed Donald and Carnevale that he intended to retire at the end of 2018, they left him out of management decisions and stopped informing him of meetings. (Compl. ¶¶ 18–20.)

18. On November 7, 2016, Jack Westall ("Westall"), Edwards's attorney, sent a letter to PFA (the "November 7 Letter") stating that Edwards would retire on December 31, 2016. (Compl. ¶ 21, Ex C.) The November 7 Letter set out Edwards's proposed terms for the redemption of his stock under the Stockholders' Agreement and his severance package under the Employment Agreement. (Compl. Ex. C.)

19. On December 6, 2016, PFA sent Edwards a letter (the "December 6 Letter") stating that, subject to Edwards's agreement to the terms set forth in the letter, PFA would purchase Edwards's stock. (Compl. ¶ 37, Ex. D.) The December 6 Letter specifically stated that PFA did not agree with Westall's assessment of how the purchase price for stock redeemed under the Stockholders' Agreement was calculated, and that PFA would purchase Edwards's stock at the purchase price determined under paragraph 3 of the Stockholders' Agreement. (Compl. Ex. D.) Additionally, PFA offered severance benefits to Edwards. (Compl. Ex. D.)

20. On December 14, 2016, Carnevale sent Edwards an e-mail, copying Donald, and attached thereto a termination agreement and notice of purchase (the "December 14 Proposal"). (Compl. ¶ 40, Ex. E.) The December 14 Proposal stated that Edwards's termination date would be December 31, 2016 and that PFA would purchase

Edwards's stock.  (Compl. Ex. E.)  The December 14 Proposal further provided for a proposed severance package that differed from the severance benefits offered in the December 6 Letter and had a total value of $122,529.49.  (Compl. Ex. E.)

21.     Edwards alleges that, pursuant to discussions with Donald and Carnevale in December 2016, PFA agreed to provide Edwards with a severance package that consisted of the following (the "Severance Package"):

- Severance pay of $100,000, (Compl. ¶ 66(a));

- Reimbursement for Edwards's cell phone expenses for one year, an amount equal to $960, (Compl. ¶ 66(b));

- Reimbursement for Medicare Part B payments, totaling $7,250.40, (Compl. ¶ 66(c));

- Reimbursement for Edwards's Blue Cross Blue Shield health insurance policy, totaling $4,512, (Compl. ¶ 66(c));

- Reimbursement for Edwards's Blue Cross Blue Shield supplemental medications policy, totaling $2,577.60, (Compl. ¶ 66(c));

- Reimbursement for Edwards's long-term care policy, totaling $1,769.49, (Compl. ¶ 66(c)); and

- Lease payments for an Acura for a period of one year, totaling $5,460, (Compl. ¶ 66(d)).

22.     Edwards further alleges that, on or before December 31, 2016, he accepted the offer of severance made by PFA.  (Compl. ¶ 151.)

23. Edwards contends that PFA has refused to comply with the Severance Package. (Compl. ¶ 75.) Additionally, Edwards alleges that PFA accepted his offer to purchase his shares, but that PFA has never specified a closing date for such purchase. (Compl. ¶¶ 38, 94, 114, 116.) Edwards further alleges that, after January 1, 2017, PFA has contended that the purchase price of Edwards's shares is based on PFA's adjusted book value as of December 31, 2016, rather than November 30, 2016, in violation of the Stockholders' Agreement. (Compl. ¶ 60.)

24. Edwards asserts direct claims against PFA for specific performance of the Stockholders' Agreement, or in the alternative, breach of the Stockholders' Agreement, and breach of contract for the Severance Package. (Compl. ¶¶ 84–123, 149–56.) Edwards asserts against Donald and Carnevale a direct claim for breach of implied contract and derivative claims for breach of the duties of due care and loyalty. (Compl. ¶¶ 124–48, 157–95.)

## III.    MOTION TO DISMISS

25. The Motion to Dismiss seeks dismissal pursuant to Rule 12(b)(6) of Edwards's direct claims for breach of implied contract and breach of contract for the Severance Package, as well as Edwards's derivative claims. (Partial Mot. Dismiss 1.)

### A.    **Legal Standard**

26. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under

some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

27. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

B. **Analysis**

1. **Breach of Implied Contract (Third Claim for Relief)**

28. Edwards brings a direct claim against Donald and Carnevale for breach of implied contract. Edwards alleges that, as parties to the Stockholders' Agreement,

there is an implied contract between the stockholders that they "will take all necessary actions to ensure that the Stockholders' Agreement is complied with." (Compl. ¶ 145.)

29. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A valid contract requires assent, mutuality of obligation, and definite terms. *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013). "[A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998). An implied contract is as valid and enforceable as an express contract, but mutual assent is determined from the parties' actions, rather than an express agreement. *Snyder v. Freeman*, 300 N.C. 204, 217–18, 266 S.E.2d 593, 602 (1980); *Sparrow Sys., Inc. v. Private Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at *21 (N.C. Super. Ct. Dec. 24, 2014). "However, it is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002) (quotations omitted); *see also Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *19 (N.C. Super. Ct. Oct. 21, 2016) ("[O]ur case law clearly holds that an express contract precludes an implied contract with reference to the same matter." (quotations omitted)).

30.     Here, the Complaint merely alleges that there was an implied contract between the stockholders that they would ensure compliance with the Stockholders' Agreement.  This allegation is a legal conclusion not entitled to a presumption of validity.  *Charlotte Motor Speedway, LLC*, 230 N.C. App. at 6, 748 S.E.2d at 175; *Plasman*, 2016 NCBC LEXIS 80, at *19.  The Complaint contains no factual allegations regarding any actions by Edwards, Donald, or Carnevale to support the existence of an implied-in-fact contract.  Moreover, the alleged implied-in-fact contract concerns the Stockholders' Agreement, which is an express contract. Therefore, because the Complaint fails to allege sufficient facts to support the existence of an implied-in-fact contract, and because the alleged implied-in-fact contract is the subject of an express contract between the parties, the Court concludes that the Complaint fails to state a claim against Donald and Carnevale for breach of implied contract.  As such, Plaintiff's claim for breach of implied contract must be dismissed with prejudice.

### 2.     Breach of Contract for Severance Package (Fourth Claim for Relief)

31.     Edwards brings a direct claim against PFA for breach of contract based on PFA's alleged failure to comply with the terms of the Severance Package.  Edwards contends that on or before December 31, 2016, PFA agreed to provide Edwards the Severance Package, and that PFA has refused to comply with its agreement.  (Compl. ¶¶ 150, 153.)

32.     PFA argues on this motion that the Complaint fails to allege sufficient facts to create a binding contract for the Severance Package because the Complaint does

not allege that Edwards accepted PFA's counteroffer in its December 6 Letter. (Mem. Supp. Partial Mot. Dismiss 4–5.) PFA further argues that the Complaint fails to state a claim because severance pay is governed by the Employment Agreement, and the Complaint does not allege that PFA breached the Employment Agreement. (Mem. Supp. Partial Mot. Dismiss 5–6.)

33. Although the Complaint does not allege that Edwards accepted PFA's counteroffer in its December 6 Letter, the Court does not read the allegations of the Complaint as contending that the contract for the Severance Package arose from PFA's December 6 Letter. The Complaint alleges that on December 14, 2016—after the December 6 Letter—Carnevale sent Edwards the December 14 Proposal. The December 14 Proposal proposed a severance package totaling $122,529.49—the exact amount of the Severance Package to which Edwards contends he and PFA agreed. (Compl. ¶ 150, Ex. E.) The Complaint further alleges that Edwards accepted PFA's offered Severance Package on or before December 31, 2016. (Compl. ¶ 151.)

34. PFA's additional argument that the Complaint does not allege that PFA breached the Employment Agreement is unavailing. The Employment Agreement provides that upon Edwards's retirement, PFA shall, if economically feasible, provide severance benefits to Edwards. The Complaint expressly alleges that PFA had determined that it was economically feasible to provide the Severance Package to Edwards. (Compl. ¶ 70.) Taking this allegation as true, as the Court must at this stage, PFA was thus required under the Employment Agreement to provide some form of severance benefits to Edwards. While PFA may not have been required to

agree to the Severance Package under the terms of the Employment Agreement, the Complaint alleges that PFA agreed to provide the Severance Package to Edwards upon his retirement on December 31, 2016, and that PFA has since failed to do so. Accordingly, the Court concludes that, at the Rule 12(b)(6) stage, the Complaint alleges sufficient facts to state a claim for breach of contract for the Severance Package. As such, the Motion to Dismiss this claim is denied.

### 3. Derivative Claims (Fifth and Sixth Claims for Relief)

35. Edwards asserts derivative claims against Donald and Carnevale for breach of the duties of due care and loyalty.

36. Pursuant to N.C. Gen. Stat. § 55-7-42,

[n]o shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

N.C. Gen. Stat. § 55-7-42. Thus, in order to have standing to bring a derivative claim, Plaintiff must have made a proper demand. N.C. Gen. Stat. §§ 55B-3(a) (stating that the North Carolina Business Corporation Act applies to professional corporations); *see also Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 93, 614 S.E.2d 351, 354 (2005).

37. Here, the Complaint states that Plaintiff did not make a demand on PFA to take any action based on Donald's and Carnevale's allegedly improper conduct

because any such demand would have been futile.  (Compl. ¶ 83.)  It is well settled, however, that the futility exception to the demand requirement was eliminated by our legislature in 1995.  *E.g.*, *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 410, 537 S.E.2d 248, 262 (2000); *see also* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.03[2] (7th ed. 2016) ("The Act now requires a prior demand on a North Carolina corporation to be made in all cases, without any exception . . . . This no-exception rule is a distinct change from prior law in North Carolina and the continuing law in many other jurisdictions, under which the courts have held that a demand on the director may be excused if it would be futile." (footnotes omitted)).  *Compare* N.C. Gen. Stat. § 55-7-40(b) (1994) ("The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort."), *with* N.C. Gen. Stat. § 55-7-42.  Thus, Plaintiff's admitted failure to make a timely written demand on PFA establishes that Plaintiff does not have standing to bring a derivative claim on behalf of PFA.

38.    "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002), and a court shall dismiss the action when it appears that the court lacks subject matter jurisdiction, N.C. Gen. Stat. § 1A-1, Rule 12(h)(3).  A defect in subject matter jurisdiction may be raised by a party or by the

court *sua sponte*. *Conner Bros. Mach. Co. v. Rogers*, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345 (2006).

39. As the Complaint affirmatively alleges that Plaintiff did not make a demand on PFA, Plaintiff does not have standing to assert his derivative claims and, therefore, the Court does not have subject matter jurisdiction over such claims. Accordingly, Plaintiff's derivative claims for breach of the duties of due care and loyalty must be dismissed without prejudice.

## IV. MOTION TO DISQUALIFY

40. The Motion to Disqualify seeks to disqualify Mr. Cash and Mr. Jones from representing both PFA, on the one hand, and Donald and Carnevale, on the other hand, in this action. The Motion to Disqualify further requests that, upon disqualification, the Court strike the Motion to Dismiss filed by Mr. Cash and Mr. Jones. Plaintiff argues that, due to the derivative claims asserted against Donald and Carnevale on behalf of PFA, Mr. Cash and Mr. Jones have a conflict of interest in representing both PFA and Donald and Carnevale in this lawsuit.

41. As the Court has already concluded that Plaintiff's derivative claims must be dismissed for lack of subject matter jurisdiction, Plaintiff's Motion to Disqualify on the basis of those claims is denied as moot.

## V. CONCLUSION

42. For the foregoing reasons, the Court hereby **ORDERS** as follows:

A. The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's direct claim against Donald and Carnevale for breach of implied

contract and Plaintiff's derivative claims (the third, fifth, and sixth

claims for relief).  Plaintiff's direct claim for breach of implied

contract is dismissed with prejudice, and Plaintiff's derivative

claims are dismissed without prejudice.  As a result, Defendants

Donald and Carnevale are dismissed from this action.

B.  The Court **DENIES** Defendants' Motion to Dismiss Plaintiff's direct

claim against PFA for breach of contract for the Severance Package.

C.  The Court **DENIES as moot** Plaintiff's Motion to Disqualify.

**SO ORDERED**, this the 29th day of June, 2017.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases